UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KARMA SIEWHARACK, on behalf of herself and all
others similarly situated,

                Plaintiff,

      v.

QUEENS LONG ISLAND MEDICAL GROUP P.C.,

                Defendant.

Index No. 11-cv-03603-WFK-ARL

**JOINT DECLARATION OF LEE S. SHALOV AND LOUIS GINSBERG IN
SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Lee S. Shalov and Louis Ginsberg hereby declare under penalty of perjury as follows:

1.      Lee S. Shalov is a partner at the law firm of McLaughlin & Stern, LLP and Louis Ginsberg is Head of the Law Firm of Louis Ginsberg, P.C.  Together, our firms serve as Plaintiff's counsel in this action ("Plaintiff's Counsel.")  We respectfully submit this declaration in support of Plaintiff's motion requesting the Court to: (1) conditionally certify the proposed settlement of this action under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b); (2) grant preliminary approval of the Global Settlement Agreement (the "Settlement Agreement") attached as Exhibit 1 hereto; (3) approve the proposed Notice of Proposed Settlement Of Class Action Lawsuit and Fairness Hearing attached as Exhibit B to the Settlement Agreement; (4) approve Plaintiff's proposed schedule for final settlement approval and set a date for the fairness hearing and related dates; (5) and approve Plaintiff's Counsel as Class Counsel.  We are fully familiar with the facts and circumstances set forth herein.

2.      This is a proposed collective and class action filed by Plaintiff Karma Siewharack on behalf of herself and other current and former hourly paid employees of Defendant Queens

Long Island Medical Group P.C. ("QLIMG" or the "Company.")  QLIMG is a physician-owned medical practice group with 19 medical offices in Long Island and over one thousand hourly paid employees.  The Company has approximately 300 primary and specialty care physicians and provides care to roughly 200,000 patients.

3.      Plaintiff's Complaint was served on July 29, 2011.   Prior to service of Defendant's Answer, Plaintiff filed an Amended Complaint on September 19, 2011.  QLIMG served its Answer to the Amended Complaint on September 30, 2011.

4.      The claims in the Amended Complaint arise under the Fair Labor Standards Act (the "FLSA") and McKinney's New York Labor Law ("NYLL.")  In principal part, Plaintiff alleges that QLIMG violated the FLSA and the NYLL by causing QLIMG's time-clock system to artificially round down the amount of time employees were working at the Company's facilities.  As a result, Plaintiff alleges that she and other hourly paid employees were not fully compensated for work performed before and after scheduled shifts and during meal breaks.  Plaintiff also alleges that QLIMG employees did not receive overtime when they worked in excess of forty hours a week.

5.      After extensive discovery efforts, substantial motion practice and several mediation sessions, Plaintiff's Counsel has secured an outstanding settlement on behalf of QLIMG employees.  As discussed below, QLIMG will create a settlement fund of $2.45 million to reimburse hourly paid employees the unpaid compensation they are owed by virtue of the Company's allegedly improper time clock policies and other unlawful labor practices.  This fund will provide a substantial, all-cash benefit for QLIMG employees in settlement of a complex lawsuit fraught with many litigation risks and obstacles.  Plaintiff's Counsel believes this is one of the largest settlements of a wage and hour class action in this District.

6.      Throughout this process, Plaintiff's Counsel expended substantial time and effort prosecuting Plaintiff's claims.   Among other things, Plaintiff's Counsel conducted in-depth interviews of QLIMG employees to determine the hours that they worked, the wages they were paid, and the amount of time they worked through breaks and before and after shifts.   Plaintiff's Counsel also reviewed thousands of pages of documents produced by Defendant and non-parties in response to multiple sets of document requests and subpoenas, including timecard reports, employee handbooks, internal e-mails, employee paystubs, and union contracts.   Plaintiff's Counsel also engaged in numerous "meet and confer" sessions with Defendant's counsel in an effort to secure a more complete production of relevant documents.   In addition, depositions of the parties were conducted and additional depositions were scheduled at the time the settlement was reached.   Comprehensive spreadsheets were also prepared by Plaintiff's Counsel to assess the scope and impact of the Company's ostensibly biased rounding policies.   Based on these efforts, Plaintiff's Counsel was able to develop a full and complete understanding of the strengths and weaknesses of Plaintiff's claims and the extent of class member damages.

7.      Plaintiff's Counsel also engaged in extensive motion practice before Magistrate Judge Arlene R. Lindsay.   Among other things, Plaintiff's Counsel moved to compel employee records in addition to those produced by Defendant regarding Plaintiff's employment with QLIMG; moved for expedited discovery regarding an acquisition transaction involving QLIMG and another entity; and opposed Defendant's motion to compel information regarding Plaintiff's finances and ability to pay litigation costs.

8.      While discovery was actively underway, several mediation sessions were held before John E. Sands, a highly experienced mediator in wage and hour class actions such as this. Those sessions -- and subsequent negotiations overseen by Mr. Sands -- resulted in an agreement

in principle to settle the litigation for $2.45 million dollars. Many weeks were thereafter devoted to negotiating the terms and conditions of the Settlement Agreement and the exhibits associated with the settlement.

9.      Pursuant to the Settlement Agreement, QLIMG will deposit $2.45 million dollars into an interest bearing settlement fund within ten days of preliminary approval of the settlement. The fund will be used to pay administration costs, attorneys' fees and expenses awarded by the Court, and a proposed service award to compensate Plaintiff for her time and commitment in prosecuting the case. In addition, QLIMG shall pay 50% of the employer's share of all state and federal payroll taxes with respect to the amounts treated as wages up to a maximum cap of $120,000. The remainder of the employer's share of state and federal payroll taxes shall be paid from the settlement fund.

10.     After these deductions are made, the fund will be distributed to QLIMG employees who do not opt out of the settlement and who submit valid proofs of claims on a *pro rata* basis depending on their length of employment with the Company and the total wages earned throughout their employment. This allocation formula seeks to fairly compensate employees based on the number of shifts they worked at QLIMG and the amount of compensation they were allegedly deprived of by virtue of the Company's rounding practices. Thus, for example, an employee with gross wages of $50,000 who worked part time for three years will receive a lesser share of the settlement fund than a full time employee with gross wages of $200,000 over a six year period.

11.     Plaintiff's Counsel are highly experienced in class action litigation and wage and hour cases such as this. Lee S. Shalov has been practicing in the class action field for over

twenty-five years and has been appointed lead or co-lead counsel in over 50 wage and hour and securities class actions.   Similarly, Louis Ginsberg has been handling wage and hour cases and other employment-related matters for twenty five years and has served as counsel or co-counsel in a number of wage and hour class actions brought on behalf of employees throughout the country.   Most recently, in or around July of 2012, Messrs. Shalov and Ginsberg were appointed Class Counsel by the Honorable Barbara S. Jones, United States District Judge, Southern District of New York in the case of *David Ludwig, on behalf of himself and all others similarly situated v. Pret A Manger (USA), Ltd., d/b/a Pret A Manger* (Index No.: 11 CV 5677), and similarly achieved a favorable settlement of a wage and hour case on a class-wide basis.

Dated: January 31, 2013
     New York, New York

_____
Lee S. Shalov

_____
Louis Ginsberg

5

EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARMA SIEWHARACK, on behalf of herself and all others similarly situated, | Index No. 11-cv-03603-WFK-ARL |
| Plaintiff, | |
| v. | |
| QUEENS LONG ISLAND MEDICAL GROUP P.C., | |
| Defendant. | |

## GLOBAL SETTLEMENT AGREEMENT

THIS GLOBAL SETTLEMENT AGREEMENT, including all exhibits hereto (collectively, with the Global Settlement Agreement, the "Agreement"), is made and entered into by Defendant Queens Long Island Medical Group P.C. ("QLIMG" or "Defendant"), the Plaintiff, Karma Siewharack (together with QLIMG, the "Parties") and the Class of individuals she seeks to represent (as hereinafter defined), and by Lee S. Shalov of McLaughlin & Stern, LLP and Louis Ginsberg of the Law Firm of Louis Ginsberg, P.C. (collectively "Class Counsel").

WHEREAS, on July 26, 2011, in a case styled *Siewharack v. Queens Long Island Medical Group P.C.*, Index No. 11-cv-03603 (WFK) (ARL) (the "Litigation"), Plaintiff sued Defendant in the United States District Court for the Eastern District of New York ("Court"). Plaintiff's putative collective action/class action complaint and subsequently filed amended complaint (collectively, the "Complaint") included allegations under the Fair Labor Standards Act ("FLSA") and New York law;

WHEREAS, after commencement of the Litigation, Class Counsel conducted substantial discovery regarding the allegations and claims asserted in the Complaint, including review of QLIMG documents, interviews of QLIMG employees and depositions of QLIMG representatives;

WHEREAS, the Parties and their counsel, during the pendency of discovery, engaged in a series of arms-length telephonic and in-person settlement negotiations, including several sessions overseen by an experienced mediator in wage and hour class actions;

WHEREAS, Defendant denies all of the allegations against it and denies that it is liable for damages to anyone with respect to the causes of action asserted in the Litigation;

WHEREAS, the Parties do not abandon their respective positions on the merits of the Litigation.  Nonetheless, the Parties recognize that continued litigation, including any appeals, would be protracted, expensive, uncertain, and contrary to their respective best interests.  Accordingly the Parties believe that this Agreement is the most efficient and beneficial method to resolve the claims asserted and those that could have been asserted therein;

WHEREAS, this Agreement is intended to, and does, effectuate the full, final, and complete resolution of all allegations and claims that were asserted, or could have been asserted, in the Litigation, including any appeals, by Plaintiff and the class members that Plaintiff seeks to represent.

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.   DEFINITIONS

In addition to various terms defined elsewhere, the terms listed in this Section shall have the meanings ascribed to them for purposes of this Agreement.

1.1   **Claims Administrator.**  "Claims Administrator" means the entity jointly selected by the Parties to provide notice to the Class (as defined below) and administer payments under the terms of this Agreement.

1.2   **Defendant's Counsel.**  "Defendant's Counsel" refers to Bressler, Amery & Ross, P.C.  For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Jed L. Marcus, 325 Columbia Turnpike, Florham Park, NJ 07932.

1.3   **Class Counsel.**  "Class Counsel" refers to McLaughlin & Stern, LLP and the Law Firm of Louis Ginsberg, P.C.  For purposes of providing any notices required under this Agreement, Class Counsel shall refer to Lee S. Shalov, 260 Madison Avenue, 17th Floor, New York, NY 10016.

1.4   **Class; Class Member.**  "Class" shall mean all current and former employees of QLIMG who were paid hourly wages at any QLIMG facility during the Covered Period (as defined below).  A member of the Class is a "Class Member."

1.5   **Covered Period.**  "Covered Period" shall mean July 26, 2005 to the date of the Order Granting Preliminary Approval (as defined below).

1.6   **Effective Date.**  "Effective Date" shall be the date that all of the following have occurred:

(A)   The Court has entered judgment and ruled on the motion for attorneys' fees and reasonable costs pursuant to Section 4.3 and for service payments pursuant to Section 4.4; and

(B)     The judgment and the rulings on such motions have become Final. "Final" means the later of:

(1)     The governing time periods for seeking rehearing, reconsideration, appellate review and/or an extension of time for seeking appellate review have expired and there have been no such actions; or

(2)     If rehearing, reconsideration, appellate review, and/or an extension of time for seeking appellate review is sought, 30 calendar days after any and all avenues of rehearing, reconsideration, appellate review and/or extension of time have been exhausted and no further rehearing, reconsideration, appellate review, and/or extension of time is permitted, and the time for seeking such things has expired, and the judgment has not been modified, amended, or reversed in any way.

1.7     **Fairness Hearing.**   "Fairness Hearing" shall mean the hearing in the Litigation on a motion for judgment and final approval of this Agreement.   The Parties will jointly file such a motion under the terms of this Agreement.

1.8     **Final Approval.**  "Final Approval" shall mean the Court's entry of an order and a judgment granting final approval to this Agreement and dismissing the Litigation with prejudice.

1.9     **Preliminary Approval.**   "Preliminary Approval" shall mean the Court's entry of an order, in the form attached as Exhibit A, conditionally certifying the Class and preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.10   **Qualified Class Member.**   "Qualified Class Member" means a Class Member who does not opt out and who meets the requirements regarding the execution and return of the Claim Form and Release set forth in Section 3.7.

2.      **Class Definition.**

2.1.    As part of this Settlement, Class Counsel shall request that the Court enter an Order certifying the Class for settlement purposes in accordance with this Agreement.   The form of class certification order shall, subject to Court approval, expressly state that the Parties and Class Counsel agree that certification of the Class is a conditional certification for settlement purposes only, and that QLIMG retains its right to object to certification of this litigation, or of any other wage and hour class or collective action, or any other class action, under Rule 23, the FLSA, or any other applicable rule, statute, law or provision.

2.2.    The Parties and Class Counsel agree that, if approved, certification of the Class is conditional certification for settlement purposes only and, if for any reason the Court does not grant final approval of the Settlement, or if final approval is not given following the appeal of any order by the Court, or if for any reason the Settlement Effective Date does not occur, the certification of the Class for Settlement purposes

shall be deemed null and void without further action by the Court or any of the Parties and each party shall retain all of its respective rights as they existed prior to execution of this Agreement and neither this Agreement, nor any of its accompanying exhibits or any orders entered by the Court in connection with this Agreement, shall be admissible or used for any purpose in this Litigation.

2.3.    The Parties and Class Counsel agree that, if approved, certification of this Class for settlement purposes is in no way an admission by QLIMG that class certification is proper in this Litigation for any purpose other than settlement, in any other wage and hour litigation, or in any other litigation, against QLIMG.  Other than for settlement purposes, QLIMG continues to assert that this Litigation fails to meet the prerequisites necessary for class or collection action treatment under applicable law. The Parties and Class Counsel further agree that, other than to effectuate the Settlement of this Litigation in this jurisdiction, the certification of this Class for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, are not intended to be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding including without limitation, any wage and hour litigation, or any other litigation against QLIMG.

2.4.    Subject to the Court's approval, and for purposes of this Agreement only, the Parties agree and consent to the certification of the following settlement class under both the FLSA and New York Labor Law:

> All current and former non-exempt employees, whether or not covered by a collective bargaining agreement, who are or were employed by Queens Long Island Medical Group P.C. in any of its offices and/or urgent care centers at any time during the Covered Period (the "Class").

Plaintiff will seek, and Defendant will not oppose for purposes of settlement, conditional certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

## 3.    APPROVAL OF SETTLEMENT AND CLASS NOTICE

3.1    **Retention of Claims Administrator.**  Within 14 calendar days of the execution of this Agreement, the Parties shall retain a Claims Administrator, who shall be responsible for claims administration and various other duties described in this Agreement.  The duties of the Claims Administrator shall be limited to those described in this Agreement, and the Claims Administrator shall have no discretion beyond that granted by this Agreement.  The Claims Administrator shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to use such information solely for purposes of claims administration.  Defendant's Counsel and Class Counsel will have equal access to the Claims Administrator, as well as all information in possession of the Claims Administrator related to the administration of the settlement, except that the Claims

Administrator shall not provide Class Counsel with access to any social security numbers provided to or obtained by the Claims Administrator in connection with its duties under the terms of this Agreement. Neither party shall have the authority or ability to expand the duties, responsibilities or authority of the Claims Administrator beyond those described in this Agreement.

3.2     All fees and expenses of the Claims Administrator shall be paid out of the Total Settlement Amount, as defined in Section 4.1. The Claims Administrator shall be required to agree to a reasonable cap for fees and expenses for claims administration work, and such cap shall provide the basis for the reserve described in Section 4.1. Any fees and expenses in excess of the cap shall not be paid to the Claims Administrator unless the Claims Administrator files a declaration with the Court explaining the basis for the additional fees and costs and receives approval by the Court for such payments. In no event shall the Claims Administrator seek additional fees and expenses after the Fairness Hearing.

3.3     **Preliminary Approval of Settlement.**     Following execution of this Agreement, Plaintiff will submit this Agreement to the Court, together with a Motion for Order Conditionally Certifying Settlement Class and Preliminary Approving a Class Action Settlement, a proposed order granting preliminary approval to the settlement (in the form attached as Exhibit A) (the "Preliminary Approval Order"), a proposed Notice to the Class of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (in the form attached as Exhibit B), a proposed Claim Form and Release (in the form attached as Exhibit C), a proposed Opt-Out Statement (in the form attached as Exhibit D); and a proposed Individual Release of Plaintiff's claims (in the form attached as Exhibit E).

3.4     **Preliminary Approval.** If the Court does not grant Preliminary Approval and enter an order in the form attached as Exhibit A, the Parties agree to negotiate in good faith over an alternative settlement, and to seek reconsideration or Court approval of a renegotiated settlement. If a mutually agreed class settlement is not approved, the case will proceed as if no settlement has been attempted, and Defendant retains the right to contest whether this case should be maintained as a class action and/or collective action and to contest the merits of the claims being asserted by Plaintiff in this Litigation.

3.5     **Notice of Settlement.**

(A)     Within 20 calendar days following the entry of the Preliminary Approval Order, Defendant will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the names and last known home addresses, phone numbers, to the extent Defendant has them, last known personal e-mail addresses of Class Members, and wage information for each Class Member.

(B)     The data provided by Defendant to the Claims Administrator pursuant to this Agreement (other than home address information) shall be conclusively presumed to be accurate. Although QLIMG will undertake reasonable efforts to obtain the above information, it is understood that QLIMG makes no

representations or warranties as to the accuracy of the information provided by or through it under this Section. Plaintiff and Class Members covenant not to sue QLIMG based on any claim or cause of action related to or arising out of an allegation that information provided under this Section is not accurate. Other than as described in this Section, QLIMG will have no further obligations to identify or provide information regarding actual or potential Settlement Class Members.

(C)     Promptly following the Court's entry of the Preliminary Approval Order in the form attached as Exhibit A, the Claims Administrator shall prepare final versions of the following documents, incorporating into the documents the relevant dates and deadlines set forth in the Court's order: (1) a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form attached as Exhibit B, (2) an Opt-Out Statement in the form attached as Exhibit D; and (3) a Claim Form and Release in the form attached as Exhibit C.

(D)     Within 15 calendar days after the Defendant's delivery of the information referenced in Section 3.5(A) (the "Initial Mailing Deadline"), the Claims Administrator shall mail the final versions of the documents referenced in Section 3.5(C), via (i) First Class United States mail, postage prepaid, to each Class Member and (ii) personal e-mail to the Class Members for whom Defendant has provided personal e-mail addresses.

(E)     The Claims Administrator shall take reasonable steps to obtain the correct home address of any Class Members for whom the documents referenced in Section 3.5(C) are returned by the post office as undeliverable. Where correct addresses are obtained, the Claims Administrator shall attempt to remail the documents. In no event shall the Claims Administrator attempt re-mailings of the Notice to any Class Member more than 30 calendar days after the date of the initial mailing. The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any documents returned by the post office as undeliverable.

(F)     Proposed payments to Qualified Class Members who cannot be located within six months of the Effective Date will be returned to QLIMG (the "Unclaimed Settlement Amounts").

(G)     The Claims Administrator and Class Counsel will not attempt to contact or contact Class Members in person, by telephone, or by other real time means while such Class Members are on QLIMG's premises or otherwise engaging in work-related duties for QLIMG.

(H)     The Claims Administrator shall also periodically inform both Class Counsel and Defendant as to the Claim Forms and Releases received.

3.6     **Class Member Opt-Out.**

(A)     Any Class Member may request exclusion by "opting out."  To do so, a Class Member must submit a written and signed request for exclusion to the Claims Administrator, in the form of the Opt-Out Statement attached as Exhibit D.

(B)     To be effective, a Class Member's Opt-Out Statement must be postmarked no later than a date to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, in the form of Exhibit B.  This date will be 60 calendar days after the Initial Mailing Deadline, and the period of time between the Initial Mailing Deadline and this date shall be referred to as the "Opt-Out Period."

(C)     The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives.  Within 5 business days of its receipt thereof, the Claims Administrator shall send to Class Counsel and Defendant's Counsel copies of each such Opt-Out Statement.  This obligation shall be on-going, regardless of whether the Opt-Out Statement is timely or not.

(D)     Within 10 calendar days after the end of the Opt-Out Period, the Claims Administrator shall file with the Clerk of Court copies of any timely submitted Opt-Out Statements.  The filed copies shall be stamped as described in Section 3.6(C), and all address information and social security numbers shall be redacted from them.  Additionally, within 10 calendar days after the end of the Opt-Out Period, the Claims Administrator shall send to Class Counsel and Defendant's counsel a final list of all persons who timely submitted Opt-Out Statements and stamped copies of any Opt-Out Statements received with Social Security Numbers redacted.  The Claims Administrator shall retain the originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not timely opt out will be bound by the release set forth in Section 5.

(F)     In the event that twenty percent (20%) or greater Members opt-out of this Settlement by the close of the Opt-Out Period, QLIMG shall have the right to withdraw from the Settlement and this Agreement with no further obligation.

3.7     **Claim Form and Release.**

(A)     A Class Member who does not opt out pursuant to Section 3.6 will be deemed eligible for a payment hereunder if and only if he or she timely and fully executes and returns the Claim Form and Release (in accordance with the instructions) in the form attached as Exhibit C, which will be attached to the Notice described in Section 3.5, including: (1) an acknowledgment that, by signing the Claim Form and Release, he or she opts in to the case pursuant to 29 U.S.C. § 216(b); and (2) a release of claims consistent with that set forth in Section 4 of this Agreement. The Claim Form and Release must be personally filled out by the current or former

employee who seeks to participate in the settlement or someone with a legal right to act on his or her behalf.

(B)    To be effective, Class Members' Claim Form and Release must be sent to the Claims Administrator via First Class United States Mail, postage prepaid, and be received by 60 calendar days after the initial mailing of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

### 3.8    Objections To Settlement.

(A)    Class Members (other than those who have opted out pursuant to Section 3.6) may present objections to the proposed settlement at the Fairness Hearing.  To do so, an objector must first present his or her objections to the Claims Administrator in writing.  To be considered, such objections must be sent to the Claims Administrator via First-Class United States mail, postage prepaid; they must be postmarked no later than 60 calendar days after the Initial Mailing Deadline; and they must be received by the Claims Administrator no later than 7 calendar days after the end of the Opt-Out Period.  The Claims Administrator shall stamp the postmark date and the date received on the original of any such objection.  Additionally, the Claims Administrator shall send copies of each objection to Class Counsel and Defendant's Counsel by facsimile and overnight delivery not later than 2 business days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-Out Period.

(B)    An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections to the Claims Administrator.  Any objector may withdraw his/her objections at any time.  No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 3.8(A) and (B).

(C)    The Parties may file with the Court written responses to any filed objections together with their motion for final approval of the settlement prior to the Fairness Hearing.

(D)    At no time will the Parties or their counsel solicit or encourage members of the Settlement Class to object to the Settlement Agreement.

3.9    **Motion for Judgment and Final Approval.**  Not later than 45 calendar days after the end of the Opt-Out Period, the Parties will file a Motion for Judgment and Final Approval requesting:    (1) an order granting final certification, for settlement purposes, of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) and final approval of this Agreement, including a ruling that the Agreement is final, fair, reasonable, adequate and binding on all Class Members who have not timely opted out pursuant to Section 3.6; (2) entry of judgment in accordance

with this Agreement and in a form to be proposed by the Parties; (3) dismissal of the Litigation with prejudice, subject to the Court's retention of jurisdiction to oversee enforcement of the Agreement; and (4) an order approving as fair the individual release in the form attached as Exhibit E.  The Parties' Motion for Judgment and Final Approval will be considered separate and apart from the Court's consideration of any applications for attorneys' fees and costs and/or service payments, and the Court's ruling on any such separate applications will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.10   **Effect of Failure to Grant Judgment and Final Approval.**  In the event the Court fails to enter an order and a judgment in the form to be proposed by the Parties, or that judgment does not become Final, the Parties jointly agree to:  (1) seek reconsideration or appellate review of the decision denying entry of judgment, and (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event that reconsideration and/or appellate review is denied, and a mutually agreed settlement is not approved, the Litigation will resume and:

(A)   The Litigation will proceed as if no settlement has been attempted.  In that event, the Class, which was certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) for purposes of settlement, shall be decertified, and Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in this action.

(B)   The Court will provide notice to all Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to any person under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(C)   In the event the Settlement Agreement is terminated, canceled or fails to become effective in accordance with its terms, all Parties will be returned to their respective statuses as of the date and time immediately prior to the execution of this Settlement Agreement, and the Parties will proceed in all respects as if this Agreement had not been executed.  In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought, consideration and execution of the Settlement Agreement will be stayed pending final resolution of the appeal or other appellate review.

## 4.   CONSIDERATION

4.1   **Total Settlement Amount.**  Within 10 days after entry of the Preliminary Approval Order, QLIMG agrees to deposit into an interest bearing escrow account the sum of $2,450,000.00 (TWO MILLION FOUR HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO CENTS) (including earned interest, the "Total Settlement Amount"), which shall cover, resolve, and fully satisfy any and all amounts due under

this Agreement, including:  (1) all payments to be made to Plaintiff and Class Members pursuant to this Agreement; (2) all attorneys' fees and costs approved by the Court; (3) any court-approved service payment; and (4) the reserve set aside for reasonable costs of settlement administration.  Under no circumstances will Defendant be required to pay more than $2,450,000.00, except as set forth below in Section 4.2.

4.2  **Taxation**.  To the extent that any payments are considered wages, employment taxes shall not increase the cost of the Agreement to QLIMG under any circumstances, except that QLIMG shall be responsible for FIFTY PERCENT (50%) of its share of employment taxes, up to a maximum cap of ONE HUNDRED TWENTY THOUSAND DOLLARS ($120,000)(the "QLIMG Tax Share"), with the other FIFTY PERCENT (50%) coming from the Total Settlement Amount (the "Class Tax Share"). Otherwise, QLIMG shall not be required to pay any more money other than the Total Settlement Amount and the QLIMG Tax Share. The Total Settlement Amount established by the Agreement which may go directly to Qualified Class Members shall be reduced by the amount of the Class Tax Share.  In this regard, a Qualified Class Member's share of payroll taxes will be deducted from the member's individual allocation from the Total Settlement Amount.  The wage portion will be reportable to the IRS via W-2 forms.

4.3  **Attorneys' Fees and Expenses.**

(A)    At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33.33% of the Total Settlement Amount, plus any interest earned thereon, as an award of attorneys' fees and for an additional amount in reimbursement for reasonable litigation costs and expenses, which, if approved, shall be paid from the Total Settlement Amount set forth above in Section 4.1. Defendant will not oppose such a fee and cost application.  Class Counsel understand and agree that such payment shall be QLIMG's full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of individuals in connection with the Litigation, and that the fee and cost award by the Court shall supersede and extinguish, as of the Effective Date, any prior agreement between Class Counsel and Plaintiff (and/or, as the case may be, any other Class Member) concerning attorneys fees and costs associated with the Litigation.  Under no circumstances will either the Plaintiff or any member of the Class be deemed a "prevailing party" for purposes of any further payment of attorneys' fees and/or costs. Defendant shall have no additional liability for any fees and costs associated with the Litigation.

(B)    Pursuant to written directions from Class Counsel to Defendant's Counsel, attorneys' fees and expenses awarded by the Court, together with Plaintiff's Service Payment (as defined below), shall be paid to Class Counsel, c/o McLaughlin & Stern, LLP, within ten days of the date the Court enters an Order awarding such fees, expenses and payment.  In the event the Court's Order regarding such fees, expenses and payment is reversed, vacated or modified on motion for reconsideration or appeal such that the amount of attorneys' fees, expenses and payment are reduced or the settlement is not approved as set forth in this Agreement, Class Counsel shall be liable to refund the excess award previously paid.

4.4    **Service Payment.**

(A)    At the Fairness Hearing, Plaintiff Karma Siewharack, through counsel, will apply for a service payment not to exceed $10,000 to reflect the time, effort and expense incurred by her in bringing and maintaining the Litigation. This service payment, if approved, shall be paid from the Total Settlement Amount set forth above in Section 4.1.

(B)    Defendant will not oppose any such application. Any service payment approved by the Court shall be paid from the Total Settlement Amount.

(C)    The service payment and the requirements for obtaining such payment set forth in this Section are separate and apart from, and in addition to, other recovery to which Plaintiff might be entitled, and other requirements for obtaining such recovery under other provisions of this Agreement.

(D)    The service payment shall constitute special awards to Plaintiff Karma Siewharack and shall not be considered as a payment of overtime, salary, wages and/or compensation to any Qualified Class Member under the terms of any company benefit plan or for any purpose except for tax purposes as provided under Section 4.5. The receipt of service payment shall not affect the amount of contribution to or level of benefit under any company benefit plan.

4.5    **Settlement Payments.**

(A)    A Class Member who does not opt out pursuant to Section 3.6 will be deemed eligible for a payment hereunder if and only if he or she timely and fully executes and returns the Claim Form and Release (in accordance with the instructions), including the release and opt-in acknowledgment in accordance with Section 3.7 above. Regardless of whether he or she timely and fully executes and returns the Claim Form and Release, any Class Member who does not opt out pursuant to Section 3.6 is subject to the releases set forth in Section 5.

(B)    Class Members who meet the requirements of Section 3.7(A) regarding the execution and return of the Claim Form and Release shall be referred to herein as "Qualified Class Members."

(C)    Settlement payments to Qualified Class Members shall not be considered as a payment of overtime, salary, wages and/or compensation to any Qualified Class Member under the terms of any company benefit plan or for any purpose except for tax purposes as provided under Section 4.7. The receipt of settlement payments shall not affect the amount of contribution to or level of benefits under any company benefit plan.

(D)    If determined to be necessary by the Claims Administrator, special expenses related to transmission of a payment to a Claimant may be deducted from the amount of the Total Settlement Amount listed below at Section 4.1.

(E)    The Claims Administrator shall calculate "Settlement Payments" for each Class Member.  All Settlement Payments to Qualified Class Members shall be paid from the Net Settlement Amount.  The Net Settlement Amount is the Total Settlement Amount (see Section 4.1), less attorneys fees and expenses (see Section 4.3), the service payment (see Section 4.4.), administration costs (see Section 3.2.), and the Class Tax Share (see Section 4.2).  The Settlement Payments shall be calculated as follows:  Each Qualified Class Member shall be entitled to that fraction of the Net Settlement Fund (as defined in paragraph 4.5) which corresponds to the ratio that his or her Gross Earnings (as defined below) bears to the aggregate of all Qualified Class Members' Gross Earnings.  The term "Gross Earnings" shall mean all gross wages paid to such Qualified Class Member by QLIMG during the Covered Period as reflected in IRS Forms W-2 ("Gross W-2 Earnings").  The formula would therefore be Net Settlement Fund x (Qualified Class Member Gross W-2 Earnings /Class Gross W-2 Earnings).  For example, if during the Covered Period, Qualified Class Member No. 1 had Gross W-2 Earnings of $600,000 attributable to non-exempt work, and the aggregate of all Qualified Class Members' Gross W-2 Earnings attributable to non-exempt work is $300,000,000,   Qualified Class Member No. 1 would be entitled to $3,200    (reflecting a hypothetical Net Settlement Fund of $1,600,000 x $600,000/$300,000,000).

4.6    **Taxability of Payments.**

(A)    For tax purposes, 50% of the respective Settlement Payments made to the respective payees (collectively, "Employees") pursuant to Section 4.5. shall be treated as back wages, and 50% of such payments shall be treated as non-wage liquidated damages and interest.

(B)    The Claims Administrator, as administrator of the QSF (as defined in Section 6(c) of the Agreement) making such payments, shall report that portion of the respective Settlement Payments treated as wages to the respective Employees and to the United States Internal Revenue Service and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on Forms W-2.  Such portions of the Settlement Payments treated as wages shall be subject to applicable employment taxes and withholding taxes, as determined by the Claims Administrator as administrator of the QSF making such payments.  In the event that it is subsequently determined by any Taxing Authority that any Employee owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that Employee and that Defendant will not be responsible for the payment of such taxes, including any interest and penalties.  The Claims Administrator, as administrator of the QSF, shall report that portion of the Settlement Payments treated as liquidated damages and interest pursuant to this Section to the respective Employees and Taxing Authorities, to the extent required by law, under the Employees' names and federal taxpayer identification numbers on Forms 1099, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(C)     The Claims Administrator, as administrator of the QSF, shall report to the respective payees and to the Taxing Authorities on a Form 1099 any service payments made pursuant to Section 4.3, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(D)     The Claims Administrator, as administrator of the QSF, shall report the fees and costs paid to Class Counsel pursuant to Section 4.2: (i) to Class Counsel (and to the Taxing Authorities) on a Form 1099, under Class Counsel's federal taxpayer identification number; and (ii) to each Qualified Class Member (and to the Taxing Authorities) on a Form 1099, under Qualified Class Member's federal taxpayer identification number, in an amount equal to each such Qualified Class Member's proportional share of such payments.   Payment of such fees and such costs to Class Counsel shall be made without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(E)     The Defendant shall have no liability or responsibility whatsoever for taxes of the QSF, any Class Member, Class Counsel, or any other person or the filing of any tax returns, information reports or other documents with the Internal Revenue Service or any other taxing authority with respect thereto.  Employees will be solely responsible for all taxes, interest and penalties owed by the Employees with respect to any payment receive pursuant to this Agreement.    Employees will indemnify, defend, and hold Defendant and the Claims Administrator harmless from and against any and all taxes and interest as a result of an Employee's failure to timely pay such taxes. Plaintiff, on behalf of the Class, acknowledges and agrees that Defendant has provided no advice as to the taxability of the payments received pursuant to this Agreement.

(F)     For tax purposes:

(1)     The Defendant shall be the "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) to the QSF with respect to the amounts transferred;

(2)     The Claims Administrator shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(1)(2) or any other applicable law on or with respect to the QSF, and in accordance with Section 4.5(B) of this Agreement; and

(3)     The Defendant and the Claims Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification

as a QSF, including any relation-back election within the meaning of Treasury Regulation § 1.468B-1(j).

## 5.   RELEASE

5.1   **Persons and Entities to Be Released.**   The persons released pursuant to this Agreement are QLIMG and Navigant Consulting Inc. and their respective successors, assigns, representatives, insurers, parents, subsidiaries, divisions, affiliates and related companies, present and former members, officers, agents, directors, partners, supervisors, attorneys, employees, consultants, and each and every one of them, and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, and each and every one of them and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, as well as Dr. Carlos Hleap, Frank Bonanno, Lonn McDowell, Peter Wolf, Karen O'Neill, Michael Horton, Dr. Anup Gewalla, Dr. Mark Friedman, and Dr. Roy Guinto; (all of which are referred to collectively as the "Released Parties").

5.2   **Release of Claims.**   By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiff and each Class Member who does not timely opt out pursuant to Section 3.6, forever and fully release the Released Parties (as identified in Section 5.1 above) from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or hours worked or that otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation ("Released Claims").   The Released Claims include without limitation claims asserted in the Litigation and any other claims based on federal, state or local law governing overtime pay, exempt status, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to provide itemized wage statements or wage notices, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146.

5.3   **Release of Fees and Costs.**   Class Counsel and Plaintiff, on behalf of the Class, and each individual member of the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with the Litigation and Class Counsel's representation of any and all individuals in the Litigation.   Class Counsel further understand and agree that any fee payments approved by the Court will be Defendant's

full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.   Defendant shall have no additional liability for any fees and costs associated with the Litigation.

5.4    **No Assignment.**  Class Counsel and Plaintiff, on behalf of the Class, and each individual member of the Class, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.5    **No Other Lawsuits**.  Each Class Member hereby agrees and covenants not to file, initiate, or join any lawsuit (either individually, with others, or as part of a class) in any forum, pleading, raising, or asserting any Claim or Claims barred or released by this Agreement.

5.6    **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiff, Class Members, or any other individual, individually or collectively, all such liability being expressly denied.   Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this agreement to avoid further protracted litigation and to resolve and settle all disputes.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement:  (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on part of the Defendant or of the truth of any of the factual allegations asserted in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and all exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 6.    PLAN OF DISTRIBUTION

(A)    Within 10 calendar days after the Final Approval, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel a proposed plan of distribution of the Net Settlement Amount, containing the names of and proposed distribution to Qualified Class Members ("Plan of Distribution").   At the same time, the Claims Administrator shall also provide an itemized list of its costs, expenses, payroll taxes due with respect to the Settlement Payments to Qualified Class Members and all other amounts to be deducted from the Net Settlement Amount, and shall also specify the Unclaimed Settlement Amount.  Each Party shall have 7 calendar days from receipt of the Plan of Distribution to serve the other Party

and the Claims Administrator with any corrections to the Plan of Distribution, or to comment on the administrative costs and expenses or other deductions.  The Claims Administrator shall make any changes to the Plan of Distribution mutually agreed upon by the Parties in writing and then serve the final Plan of Distribution within 7 calendar days of receiving the last of such corrections.

(B)   If the Parties disagree over the Plan of Distribution, they will submit any disagreement to the Court for resolution.  Any dispute over administrative costs and expenses shall also be submitted to the Court.

(C)   Within 10 calendar days after the Effective Date, or the date on which the Court resolves any disputes under Section 6(B), whichever is later, Defendant shall transfer the Total Settlement Amount, less attorneys' fees, expenses and the service payment awarded by the Court, into a Qualified Settlement Fund (the "QSF"), within the meaning of Treasury Regulation § 1.468B-1, *et seq.*

(D)   Within 10 calendar days of Defendant making the transfer described in Section 6(C), the Claims Administrator will pay each Qualified Class Member his or her Settlement Payment as described in Section 4.5(E).

(E)   In connection with the foregoing, the Claims Administrator will also timely mail all associated tax forms described in Section 4.7.  The Claims Administrator shall use reasonable efforts to make a second mailing to Qualified Class Members whose checks are returned because of incorrect addresses.  Such efforts shall include using social security numbers to obtain better address information and attempting to call such individuals.  Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator.  All efforts of the Claims Administrator to send checks to Qualified Class Members shall cease no later than 2 months after the Claims Administrator makes the initial mailing of the checks.  Any check not cashed by the payee within 120 days after the Claims Administrator makes the initial mailing of the check shall be void.  Payment may be stopped on such check, and the amount thereof shall be returned to QLIMG, subject to Notice to Class Counsel.

## 7.   PUBLIC STATEMENTS; CLASS MEMBER INQUIRIES; NO SOLICITATION

Class Counsel may publish a brief description of the Litigation together with the Global Settlement Agreement and Exhibits on their respective websites.

## 8.   MISCELLANEOUS

8.1   **Cooperation Between The Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use reasonable efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

8.2     **Entire Agreement.**   Other than the Claim Forms and Releases, this Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.   All prior and contemporaneous negotiations and understandings between the Parties (other than executed Claim Forms and Releases) shall be deemed merged into this Agreement.

8.3     **Binding Effect.**   This Agreement shall be binding upon the Parties and, with respect to Plaintiff and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

8.4     **Arms' Length Transaction; Materiality of Terms.**   The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering this Agreement.

8.5     **Acknowledgement.**    All Parties acknowledge and agree that, in negotiating and entering into this Settlement Agreement, they were represented by counsel who have explained the meaning and effect of this Settlement Agreement.

8.6     **Res Judicata.**   This Settlement Agreement and any Final Judgment entered by the Court will constitute a full and complete defense to, and may be used as the basis for an injunction against, any suit or other proceeding that has been or may be instituted, prosecuted or threatened for the purpose of asserting any claim released by this Settlement Agreement.

8.7     **Disposition of Documents Produced in Class Action**.  Within thirty (30) days after the Effective Date, counsel for the Parties will either return to the producing party or non-party all Confidential documents produced in the Class Action or destroy all such documents, except to the extent that such documents are relevant to the subject matter of an ongoing dispute under this Settlement Agreement or to the distribution of proceeds to members of the Settlement Class, or are part of the Court record.  Once any such disputes are finally resolved, the documents (except for documents that are included in the Court record) will be disposed of as provided above.

8.8     **Successors and Assigns**.  This Settlement Agreement will be binding upon, and inure to the benefit of, any successors or assigns of the Parties hereto.

8.9     **Notice**.  Unless the terms of this Settlement Agreement provide otherwise, all notices, requests, demands and other communications required or permitted to be given pursuant to this Settlement Agreement will be in writing and will be delivered personally, sent by overnight delivery or emailed to: (i) Counsel for QLIMG:   Jed Marcus, Bressler, Amery & Ross, P.C., 325 Columbia Turnpike, Florham Park, N.J. 07932; (ii) Class Counsel:  Lee Shalov, McLaughlin & Stern LLP, 260 Madison Ave., New York, NY 10016; and (iii) Class Counsel:  Louis Ginsberg, Esq., Law Offices of Louis Ginsberg, P.C., 1613 Northern Blvd., Roslyn, NY 11576.   Addresses may be changed if notice is given pursuant to this section.

8.10   **Settlement Agreement Fair, Adequate and Reasonable**.   Plaintiff, Class Counsel and QLIMG believe that this is a fair, adequate and reasonable Agreement and that the Parties have arrived at this Agreement through arms' length negotiations that have taken into account all relevant factors, both present and potential.

8.11   **Captions.**   The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

8.12   **Construction.**   This Agreement shall be construed in accordance with the laws of the State of New York.   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.   Each party participated jointly in the drafting of this Agreement; therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

8.13   **Force and Effect.**   Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

8.14   **Continuing Jurisdiction.**   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated hereby.   The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

8.15   **Waivers, etc. to be in Writing.**   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.   Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

8.16   **Counterparts.**   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

8.17   **Facsimile & Email Signatures.**   Any signature made and transmitted by facsimile or email for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

     **8.18   Signature by Class Counsel.**   By their signatures below, Class Counsel execute this Agreement as to the duties and obligations herein that pertain to Class Counsel.   In addition, Class Counsel represents, by their signatures below, that they have been authorized by the Plaintiff to sign this Agreement on his behalf.

**BRESSLER, AMERY & ROSS, P.C.**

By: _____
      Jed L. Marcus

DATED: _____1 – 28_____, 2013

**McLAUGHLIN & STERN, LLP**

By: _____
      Lee S. Shalov

DATED: ___1 – 28___, 2013


**THE LAW FIRM OF LOUIS GINSBERG**


By:_____
      Louis Ginsberg

DATED: _____, 2013

8.18   Signature by Class Counsel.  By their signatures below, Class Counsel execute this Agreement as to the duties and obligations herein that pertain to Class Counsel.  In addition, Class Counsel represents, by their signatures below, that they have been authorized by the Plaintiff to sign this Agreement on his behalf.


BRESSLER, AMERY & ROSS, P.C.          McLAUGHLIN & STERN, LLP


By:_____          By:_____
     Jed L. Marcus                                    Lee S. Shalov


DATED:        _____, 2013
 
                              DATED:        _____, 2013


                              THE LAW FIRM OF LOUIS GINSBERG


                              By:_____
                                    Louis Ginsberg


                              DATED:        Jan. 25, 2013

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KARMA SIEWHARACK, on behalf of herself and all
others similarly situated,

        Plaintiff,

    v.

QUEENS LONG ISLAND MEDICAL GROUP P.C.,

        Defendant.

Index No. 11-cv-03603-WFK-ARL

## [PROPOSED] ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, (2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING DISSEMINATION OF NOTICE AND RELATED MATERIAL TO THE CLASS, AND (4) SETTING DATE FOR FAIRNESS HEARING AND RELATED DATES

After engaging in months of discovery and participating in a several mediation sessions, and notwithstanding their adversarial positions in this matter, Plaintiff Karma Siewharack ("Plaintiff" or "Siewharack") and Queens Long Island Medical Group P.C. ("QLIMG" or "Defendant") (collectively, the "Parties") negotiated a settlement of this litigation. The terms of the proposed settlement ("Settlement") are set forth in the proposed Global Settlement Agreement and accompanying exhibits ("Agreement," attached hereto as Exhibit 1).

On _____, 2013, Plaintiff filed a Notice Of Motion For Order: (1) Conditionally Certifying Settlement Class; (2) Granting Preliminary Approval To Proposed Class Action Settlement And Plan Of Allocation; (3) Directing Dissemination of Notice And Related Material To The Class; and (4) Setting Date For Fairness Hearing And Related Dates ("Motion"). In the Motion, Plaintiff requested that this Court grant conditional certification of a settlement class, together with a FLSA collective action. Plaintiff also requested that the Court grant preliminary approval to the Agreement, including the plan of allocation in that Agreement, and that the Court

approve a proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Class Notice," attached hereto as <u>Exhibit B</u> to the Settlement Agreement), a proposed Claim Form and Release (attached hereto as <u>Exhibit C</u> to the Settlement Agreement), and a proposed Opt-Out Statement (attached hereto as <u>Exhibit D</u> to the Settlement Agreement).

Having reviewed the Settlement Agreement and Motion, along with the Parties' prior submissions in this matter, the Court now **FINDS, CONCLUDES, AND ORDERS** as follows:

## I.  <u>Background</u>

Plaintiff Siewharack alleges that QLIMG's time-clock system failed to fully compensate hourly paid, non-exempt employees at Defendant's facilities for all work performed prior to and after their scheduled shifts and during meal breaks. She further alleges that hourly non-exempt employees did not receive overtime for all hours worked over forty (40) hours in a week. Based on such allegations, Plaintiff asserts claims against QLIMG for unpaid straight time and overtime wages under the Fair Labor Standards Act and New York Labor Law. QLIMG has disputed, and continues to dispute, Plaintiff's allegations in this lawsuit and denies liability for any of the claims that have or could have been asserted by Plaintiff or the persons she seeks to represent.

## II.  <u>Definition Of The Class</u>

The Parties have entered into the Agreement solely for purposes of compromising and settling their disputes in this matter. As part of the Agreement, QLIMG has agreed not to oppose, for settlement purposes only, conditional certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) and 29 U.S.C. § 216(b) of the following settlement class (the "Class"):

> All current and former non-exempt employees, whether or not covered by a collective bargaining agreement, who are or were employed by Queens Long Island Medical Group P.C. ("QLIMG") in any of its offices and/or urgent care centers at any time during the Covered Period (as defined in the Agreement).

**III.**    **Designation Of The Class As An FLSA Collective Action**

The Court finds that the members of the Class are similarly situated within the meaning of Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), solely for purposes of determining whether the terms of Settlement are fair. Accordingly, the Court conditionally certifies the Class as an FLSA collective action.

**IV.**    **Rule 23 Certification of the Class**

In examining potential conditional certification of the Class, the Court has considered: (1) the allegations, information, arguments, and authorities cited in the Motion for Preliminary Approval and supporting memorandum and Declaration; (2) the allegations, information, arguments, and authorities provided by the Parties in connection with the pleadings filed by each of them in this case; (3) information, arguments, and authorities provided by the Parties in conferences and arguments before this Court; (4) QLIMG's conditional agreement, for settlement purposes only, not to oppose conditional certification of the Class specified in the Agreement; (5) the terms of the Agreement, including, but not limited to, the definition of the Class specified in the Agreement; and (6) the elimination of the need, on account of the Settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification.

In connection with certifying the Class, the Court makes the following findings applicable solely to this Settlement:

      a.    The Class has more than 100 members and therefore is sufficiently numerous that joinder of all members of the Class ("Class Members") is impracticable;

b.     There are questions of law or fact common to all Class Members, including whether QLIMG's time-clock system rounded down the actual amount of time Class Members performed work for the Defendant;

c.     The Class Representative's claims are typical of Class's claims in that the Class Representative raises the same types of claims as the Class Members;

d.     The Class Representative can fairly and adequately represent the Class's interests, in that: (1) the Class Representative has retained counsel who are qualified and experienced in the issues raised in this litigation; (2) the Class Representative does not have any apparent interests antagonistic to the interests of the Class; and (3) the Court finds that the FLSA and the state laws under which the claims in this matter arise are substantially similar and provide similar relief;

e.     The common questions of law and fact set forth in paragraph (b) above, predominate over any questions affecting only individual members; and

f.     The class action device is superior to all other available methods for fairly and efficiently settling this matter.

Based on those considerations and findings, the Court hereby finds that the Class proposed in this matter is identifiable and that the requirements of Federal Rule of Civil Procedure 23(a) are satisfied, including numerosity, commonality, typicality, and adequacy of the representative and her counsel.

The Court further concludes that the requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied because questions of law and fact common to the Class Members predominate over any questions affecting only individual members and that a settlement class is superior to other available methods for the fair and efficient adjudication of this matter.

Therefore, solely for the purpose of determining whether the terms of settlement are fair, reasonable, and adequate, the Court conditionally certifies the Class, as defined in Section II above, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

## V.    Appointment Of Class Representative And Class Counsel

Karma Siewharack is appointed as class representative of the Class, both under Rule 23 and under 29 U.S.C. § 216(b).

The following attorneys and law firms are appointed as class counsel for the Class ("Class Counsel"):  Lee S. Shalov of McLaughlin & Stern, LLP, and Louis Ginsberg of The Law Firm of Louis Ginsberg, P.C.

## VI.   Disposition Of Settlement Class If Settlement Agreement Does Not Become Effective

If, for any reason, the Agreement ultimately does not become effective, QLIMG's agreement not to oppose conditional certification of the Class shall be null and void in its entirety; this Order conditionally certifying the Class shall be vacated; the Parties shall return to their respective positions in this lawsuit as those positions existed immediately before the Parties executed the Agreement; and nothing stated in the Agreement, the Motion, this Order, or in any attachments to the foregoing documents shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.  In particular, the Class certified for purposes of settlement shall be decertified, and QLIMG will retain the right to contest whether this case should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiff.

**VII.   Preliminary Approval Of The Agreement And The Proposed Plan Of Allocation**

The Court has reviewed the terms of the Agreement and the description of the Settlement in the Motion papers.  Based on that review, the Court concludes that the Settlement is within the range of possible Settlement approval such that notice to the Class is appropriate.

The Court has also read and considered the Joint Declaration of Lee S. Shalov and Louis Ginsberg in support of preliminary approval.  Based on review of that Declaration, the Court concludes that the Settlement was negotiated at arm's length and is not collusive.  The Court further finds that Class Counsel were fully informed about the strengths and weaknesses of the Class's case when they entered into the Agreement.

As to the proposed plan of allocation, the Court finds that the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted.  The proposed plan of allocation is also within the range of possible approval such that notice to the Class is appropriate.

Accordingly, the Court hereby grants preliminary approval to the Agreement and the Plan of Allocation.

**VIII.   Approval Of The Form And Manner Of Distributing
Class Notice, Opt-Out Statement, And Claim Form**

Plaintiff has also submitted for this Court's approval a proposed Class Notice, Opt-Out Statement, and a proposed Claim Form and Release.  The Court now considers each of these documents in turn.

The proposed Class Notice appears to be the best notice practical under the circumstances and appears to allow Class Members a full and fair opportunity to consider the proposed Settlement and develop a response.  The proposed plan for distributing the Class Notice, and the Opt-Out Statement and Claim Form and Release to be attached to the Class Notice, likewise

appears to be a reasonable method calculated to reach all members of the Class who would be bound by the Settlement.  Under this plan, the Claims Administrator will distribute the Class Notice to Class Members by First Class U.S. Mail and personal e-mail, to the extent that Defendant has personal e-mail addresses for Class Members.  There appears to be no additional method of distribution that would be reasonably likely to notify Class Members who may not receive notice pursuant to the proposed distribution plan.

The Class Notice and Opt-Out Statement fairly, plainly, accurately, and reasonably inform Class Members of:  (1) appropriate information about the nature of this litigation, the settlement class at issue, the identity of Class Counsel, and the essential terms of the Agreement and Settlement; (2) appropriate information about Class Counsel's forthcoming application for attorneys' fees and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the Settlement; (4) appropriate information about this Court's procedures for final approval of the Settlement Agreement and Settlement; (5) appropriate information about how to challenge or opt-out of the Settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation, the Agreement, and the Settlement.  Similarly, the proposed Claim Form and Release appears to allow members of the Class a full and fair opportunity to submit a claim for proceeds in connection with the Settlement.  Moreover, the Class Notice fairly, accurately, and reasonably informs Class Members that failure to complete and submit a Claim Form, in the manner and time specified, shall constitute a waiver of any right to obtain any share of the Settlement Payment.

The Court, having reviewed the proposed Class Notice, Opt-Out Statement, and Claim Form (collectively "Notice Materials"), finds and concludes that the proposed plan for

distributing the same will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements.

Accordingly, the Court hereby Orders as follows:

1.     The form and manner of distributing the proposed Notice Materials are hereby approved.

2.     Promptly following the entry of this Order, the Claims Administrator shall prepare final versions of the Notice Materials, incorporating into the Notice the relevant dates and deadlines set forth in this Order.

3.     Within 20 calendar days of the date of entry of this Order, QLIMG will provide the Claims Administrator and Class Counsel with the information regarding Class Members in accordance with the Settlement Agreement.

4.     Within 15 calendar days after receiving the information regarding Class Members specified in the Settlement Agreement, the Claims Administrator shall mail, via First Class United States Mail, postage prepaid, the final version of the Class Notice, along with the Opt-Out Statement and Claim Form, using each Class Member's last known address as recorded in QLIMG's payroll system.  The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and otherwise to provide the Class Notice.  The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s).  In no event shall the Claims Administrator make any mailing to any Class Member more than 30 calendar days after the initial mailing.

- 8 -

5.     The Claims Administrator shall take all other actions in furtherance of claims administration as are specified in the Settlement Agreement.

**IX.     Procedures For Final Approval Of The Settlement**

    **A.     Fairness Hearing**

The Court hereby schedules for _____, 2013, at the hour of \_\_\_\_\_, a hearing to determine whether to grant final certification of the Class and the FLSA collective action, and final approval of the Agreement and the Plan of Allocation (the "Fairness Hearing").  At the Fairness Hearing, the Court also will consider any petition that may be filed for the payment of attorneys' fees and costs/expenses to Class Counsel, and any service payment to be made to Plaintiff Karma Siewharack.

    **B.     Deadline To Request Exclusion From The Settlement**

Class Members who wish to be excluded from the Settlement must submit a written and signed request to opt out to the Claims Administrator using the form ("Opt-Out Statement") provided with the Class Notice.  To be effective, such Opt-Out Statements must be mailed to the Claims Administrator via First Class United States Mail, postage prepaid, and postmarked by a date certain to be specified on the Notice, which will be 60 calendar days after the Claims Administrator makes the initial mailing of the notice.

The Claims Administrator shall stamp the postmark date of the Opt-Out Statement on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendant's Counsel not later than 3 business days after receipt thereof.  The Claims Administrator also shall, within 10 calendar days after the end of the Opt-Out Period, provide Class Counsel and Defendant's Counsel with: (1) stamped copies of any Opt-Out Statements, with Social Security Numbers redacted; and (2) a final list of all Opt-Out Statements.

Also within 10 calendar days after the end of the Opt-Out Period, the Claims Administrator shall file with the Clerk of Court copies of any timely submitted Opt-Out Statements with Social Security Numbers and addresses redacted.  The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

**C.**    **Deadline For Filing Objections To Settlement**

Class Members who wish to present objections to the Settlement at the Fairness Hearing must first do so in writing.  To be considered, such objections must be mailed to the Claims Administrator via First-Class United States Mail, postage prepaid, and postmarked by a date certain, to be specified on the Notice, which shall be 60 calendar days after the initial mailing by the Claims Administrator of such Notice and received by the Claims Administrator no later than 7 calendar days after the end of the Opt-Out Period.

The Claims Administrator shall stamp the postmark date and the date received on the original and send copies of each objection to the Parties by facsimile and overnight delivery not later than 2 business days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-In Period.

**D.**    **Deadline For Filing Motion For Judgment And Final Approval**

No later than 45 calendar days after the end of the Opt-Out Period, Plaintiff will submit a Motion for Judgment and Final Approval of the Settlement Agreement and Settlement.

### E.    Deadline For Submitting Claim Forms

A Class Member who does not opt out will be eligible to receive his or her proportionate share of the settlement benefit.  To receive this share, such a Class Member must timely execute and return the Claim Form and Release (in accordance with the instructions), which will be attached to the Notice, including:  (1) a statement that, during the applicable period, he or she worked before and/or after a scheduled shift or during a meal break without being fully compensated for such work; (2) an acknowledgement that, by signing the Claim Form and Release, he or she opts in to the case pursuant to 29 U.S.C. § 216(b); and (3) a release of claims consistent with that set forth in Section 5 of the Agreement.  The Claim Form and Release must be signed by the current or former employee who seeks to participate in the Settlement or someone with a legal right to act on his or her behalf.

To be effective, Class Members' Claim Forms and Release must be sent to the Claims Administrator via First Class United States Mail, postage prepaid, and be received by 60 calendar days after the initial mailing of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

### F.    Plaintiff's And Class Members' Release

If, at the Fairness Hearing, this Court grants Final Approval to the Settlement Agreement and Settlement, Plaintiff and each individual Class Member who does not timely opt out will release claims, by operation of this Court's entry of the Judgment and Final Approval, as described in Section 5 of the Agreement, regardless of whether he or she submits a Claim Form or receives any share of the Settlement Fund.

**G.**   <u>**Releases of Class Representative**</u>

In addition, Plaintiff Karma Siewharack will execute an individual release in exchange for any court-approved service payment.


DATED: _____   _____
                              United States District Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KARMA SIEWHARACK, on behalf of herself and all
others similarly situated,

Index No. 11-cv-03603-WFK-ARL

Plaintiff,

v.

QUEENS LONG ISLAND MEDICAL GROUP P.C.,

Defendant.

## NOTICE OF PROPOSED SETTLEMENT OF
## CLASS ACTION LAWSUIT AND FAIRNESS HEARING

TO:    ALL CURRENT AND FORMER NON-EXEMPT EMPLOYEES WHO ARE OR
       WERE EMPLOYED BY QUEENS LONG ISLAND MEDICAL GROUP P.C.
       ("QLIMG") IN ANY OF ITS OFFICES AND/OR URGENT CARE CENTERS

Based on QLIMG's records, you may be a Class Member who is entitled to participate in a proposed $2,450,000.00 million settlement of the case captioned *Siewharack v. Queens Long Island Medical Gourp P.C.* (the "Lawsuit"). **Please read this Notice carefully.** It contains important information about your rights concerning the class action settlement described below.

As described more fully below, to participate in the settlement, you must submit a properly completed Claim Form and Release in time for the Claims Administrator to receive it by _____, 2013. If you fail to turn in a timely Claim Form and Release, you will receive no monetary distribution from the settlement. Unless you "Opt Out" of the Lawsuit and the Settlement by submitting an Opt-Out Statement postmarked by _____, 2013, you will be bound by the terms of the settlement, regardless of whether you submit a Claim Form and Release or receive money.

**Class Members are encouraged to participate in this settlement. The law prohibits retaliation against current or former employees who participate in settlements.**

**Important Deadlines:**

- Deadline for the Claim Form and Release: must be mailed in time for the Claims Administrator to receive it by [DATE]

- Deadline for the Opt-Out Statement: must be postmarked by [DATE]

- Deadline for objecting to the Settlement: must be postmarked by [DATE] and mailed in time for the Claims Administrator to receive it by [DATE]

For assistance completing the Claim Form and Release or for assistance with related matters, please contact the Claims Administrator at [CONTACT INFORMATION].

This Notice explains the nature of the Lawsuit and the terms of the settlement and informs you of your rights and obligations.  This Notice should not be understood as an expression of any opinion by the Court as to the merits of any of the claims or defenses asserted by the parties.  This Notice contains information about the following topics:

1.    What Is This Lawsuit About

2.    What Is A Class Action

3.    What Is The Purpose Of This Notice

4.    Who Is Included In The Lawsuit

5.    Who Is Class Counsel

6.    What Are The Benefits And Terms Of The Proposed Settlement

7.    When Is The Fairness Hearing To Approve The Settlement

8.    How Can You Object To The Proposed Settlement

9.    How Can You Opt Out Of The Settlement

10.    How Can You Examine Court Records

11.    What If You Have Questions

**1.    <u>What Is This Lawsuit About</u>**

A former employee of QLIMG, Karma Siewharack ("Plaintiff"), filed this lawsuit alleging that QLIMG violated the Fair Labor Standards Act ("FLSA") and New York Labor Law by causing QLIMG's time-clock system to round down the amount of time employees were credited with having performed work at the company's facilities.  As a result, Plaintiff alleges that she and other non-exempt employees of QLIMG were not fully compensated for work performed before and after scheduled shifts and during meal breaks.  She further alleges that hourly, non-exempt employees did not receive overtime for all hours worked over forty (40) hours in a week. Plaintiff, on behalf of herself and others she claims are similarly situated, seeks to recover unpaid wages and overtime, damages, injunctive relief and attorneys' fees and costs.

QLIMG has denied and continues to deny any wrongdoing and denies any and all liability and damages with respect to the alleged facts or causes of action asserted in the Lawsuit.  To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, however, QLIMG has concluded that it is in its best interests to resolve and settle the Lawsuit by entering into a settlement agreement (the "Settlement").

The Lawsuit is presently before Judge William F. Kuntz, United States District Judge for the United States District Court for the Eastern District of New York. Judge Kuntz has not made any decisions on the merits of the case. On _____, 2013, Judge Kuntz conditionally certified this matter as a class action and granted preliminary approval of the Settlement (the "Preliminary Approval Order"), subject to a fairness hearing which will take place on _____, 2013.

**2.      What Is A Class Action**

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more representative plaintiffs, also known as "Plaintiffs" or "Class Representatives," file a lawsuit asserting claims on behalf of the entire class.

**3.      What Is The Purpose Of This Notice**

Judge Kuntz has ordered that this Notice be sent to you because you may be a Class Member. The purpose of this Notice is to inform you of the proposed Settlement and of your rights, including:

- To inform you of your right to "opt out" of the settlement class, and thereby preserve your ability to independently bring any claim that you might have;

- To inform you of your right to file objections to the Settlement;

- To inform you of the steps you must take to receive any share of the settlement funds.

**4.      Who Is Included In The Lawsuit**

You are a Class Member if you are or were employed by Queens Long Island Medical Group P.C. in any of its offices and/or urgent care centers at any time from July 26, 2005 (six years prior to the date Plaintiff's Complaint was filed) to _____, 2013 (the date the Court signed the Preliminary Approval Order), whether or not you were covered by a collective bargaining agreement.

**5.      Who Is Class Counsel**

The Court has approved and appointed lawyers to represent all members of the Class. Class Counsel are Lee S. Shalov of McLaughlin & Stern, LLP and Louis Ginsberg, of the Law Firm of Louis Ginsberg P.C. Class Counsel can be reached at _____.

**6.      What Are The Benefits And Terms Of The Proposed Settlement**

Plaintiff and Defendant have agreed to the Settlement summarized below. The complete terms and conditions of the proposed Settlement are on file with the Clerk of Court at the address listed below in Section 10. The parties' obligations under the settlement agreement will not become effective unless and until it receives final court approval, including the exhaustion of any appeals.

- 3 -

1736473_1

(a)     **What Are The Benefits Of The Settlement**

Class Members who do not opt out of the Settlement and timely and properly complete and return the Claim Form and Release, as described in Section 6(c) below ("Qualified Class Members"), will be eligible to receive a specified share of a $2,450,000.00 settlement fund (the "Total Settlement Amount"), less certain deductions described below, based on a formula approved by the Court.

The following deductions will be made to the $2,450,000.00 Total Settlement Amount prior to distribution of the settlement funds to Qualified Class Members:

- Settlement Administration Fees:  A reserve will be set aside for reasonable costs associated with administering the Settlement.  The reserve will be used to pay a claims administration company for mailings, processing claims, providing information and assistance to Class Members, and preparing information reported to the Court.

- Attorneys' Fees and Costs: Class Counsel will seek, and Defendant will not oppose, an award covering fees not to exceed 33.33% of the Total Settlement Amount described above and an additional amount reimbursement for reasonable litigation costs and expenses.  All fee awards, costs and expenses paid to Class Counsel will be paid from the Total Settlement Amount.  Thus, you have no personal responsibility to pay attorneys' fees or the costs incurred by Class Counsel.  Class Counsel have expended considerable time and effort in the prosecution of this litigation on a contingent basis, and they have advanced the expenses of this litigation in the expectation that if they were successful in obtaining a recovery in the matter, they would be paid from that recovery.  In this type of litigation, it is customary for counsel to be awarded a percentage of the recovery to cover attorneys' fees, costs, and expenses.

- Service Payment: If the Court approves such payments, the Plaintiff in this case will receive a payment of up to $10,000 because she provided service to the Class by, among other things, helping Class Counsel formulate claims, appearing for a deposition and participating in the discovery process. The payment outlined in this paragraph is separate from and in addition to the share of the Total Settlement Amount that Plaintiff may also be eligible to receive.

- Taxes:  To the extent that any payments are considered wages, one-half of the employment taxes associated with the wages paid under the Settlement will be paid directly by QLIMG up to a maximum of $120,000.00,

The remaining amount in the Total Settlement Amount (the "Net Settlement Amount") will be distributed according to the method set forth below in Section 6(d).

- 4 -

(b)     **What Is The Legal Effect Of Participating In The Settlement**

If the Court grants final approval of the Settlement, in exchange for the $2,450,000.00 settlement described above, this action will be dismissed with prejudice and Class Members who do not opt out will fully release and discharge QLIMG and certain "released parties" from claims relating to their employment.  When claims are "released," that means that a person covered by the release cannot sue the Defendant, its officers, directors, parents, subsidiaries and other related persons and entities for any of the claims that are covered by the release, such as claims regarding unpaid wages, denial of meal periods and rest breaks and failure to keep records.

The terms of the Release in the Settlement Agreement read:

"The persons released pursuant to this Agreement are QLIMG and Navigant Consulting Inc. and their respective successors, assigns, representatives, insurers, parents, subsidiaries, divisions, affiliates and related companies, present and former members, officers, agents, directors, partners, supervisors, attorneys, employees, consultants, and each and every one of them, and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, and each and every one of them and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, as well as Dr. Carlos Hleap, Frank Bonanno, Lonn McDowell, Peter Wolf, Karen O'Neill, Michael Horton, Dr. Anup Gewalla, Dr. Mark Friedman, and Dr. Roy Guinto; (all of which are referred to collectively as the "Released Parties")."

"By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiff and each Class Member who does not timely opt out pursuant to Section 3.6 of the Agreement, forever and fully releases the Released Parties from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or hours worked or that otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on federal, state or local law governing overtime pay, exempt status, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to provide itemized wage statements or wage notices, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, and the New York State

Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146.

(c)   **How Can I Participate In The Settlement**

If you wish to receive a distribution from the settlement fund, you must timely complete and return the enclosed Claim Form and Release according to the instructions provided on the form, including: (1) an acknowledgment that by signing the Claim Form and Release, you opt in to the case pursuant to 29 U.S.C. § 216(b); and (2) a release of claims consistent with that set forth in Section 6(b) of this Notice.  The Claim Form and Release must be personally filled out by the current or former employee who seeks to participate in the Settlement or someone with a legal right to act on his or her behalf.

The Claim Form and Release must be properly completed, signed, and mailed to the Claims Administrator via First Class United States Mail, and received by _____, 2013.  If you do not properly complete and timely submit the Claim Form and Release in order for it to be received by _____, 2013, you will not be eligible to receive any monetary distribution. Class Counsel recommend that you send your Claim Form and Release in the enclosed postage-prepaid envelope.

You should keep in mind that if you do not opt out, and if you do not properly and timely complete and return the Claim Form and Release in accordance with instructions provided on the form, you will not receive a distribution from the settlement fund, but you will still be bound by the Release described in Section 6(b).

(d)   **How Will My Share Be Calculated If I Participate**

Each Qualified Class Member who submits a timely and properly completed Claim Form and Release will receive a share of the Net Settlement Amount (that is, the settlement funds that remain after deductions are made for attorneys' fees and expenses, the Plaintiff's service payment, administration costs and certain employment-related taxes).  There are approximately ____ Class Members that are eligible to receive a share of the Net Settlement Amount.   The formula for distributing the Net Settlement Fund to Qualified Class Members is as follows:

Each Qualified Class Member shall be entitled to that fraction of the Net Settlement Fund which corresponds to the ratio that his or her Gross Earnings (as defined below) bears to the aggregate of all Qualified Class Members' Gross Earnings.  The term "Gross Earnings" shall mean all gross wages paid to such Qualified Class Member by QLIMG during the "Covered Period" (which is July 26, 2005 to the date the Court enters an order preliminarily approving the Settlement) as reflected in IRS Forms W-2 ("Gross W-2 Earnings").  The formula would therefore be Net Settlement Fund x (Qualified Class Member Gross W-2 Earnings /Class Gross W-2 Earnings).  For example, if during the Covered Period, Qualified Class Member No. 1 had Gross W-2 Earnings of $600,000 attributable to non-exempt work, and the aggregate of all Qualified Class Members' Gross W-2 Earnings attributable to non-exempt work during the Covered Period is $300,000,000, Qualified Class Member No. 1 would be entitled to $3,200 (reflecting a hypothetical Net Settlement Fund of $1,600,000 x $600,000/$300,000,000).

7.    **When Is The Fairness Hearing To Approve The Settlement**

The Court has granted preliminary approval of the proposed Settlement, concluding preliminarily that the Settlement is fair, adequate, and reasonable and that the proposed distribution of the Settlement amount is fair, adequate, and reasonable.

A hearing will be held to determine whether final approval of the Settlement and the amount of reasonable attorneys' fees and costs should be granted. At the hearing, the Court will hear objections, if any, and arguments concerning the fairness of the proposed Settlement and the request for reasonable attorneys' fees and costs. The hearing will take place before Judge Kuntz on _____, 2013 at [TIME], or as soon thereafter as practicable, at the Courthouse located at 225 Cadman Plaza East Brooklyn, New York 11201. The time and date of this hearing may be continued or adjourned, so please contact Class Counsel prior to the date of the hearing if you plan to attend.

YOU ARE NOT OBLIGATED TO ATTEND THIS HEARING. YOU MAY ATTEND THE HEARING IF YOU PLAN TO OBJECT TO THE SETTLEMENT. YOU MAY ALSO RETAIN YOUR OWN ATTORNEY TO REPRESENT YOU IN YOUR OBJECTIONS. IF YOU WISH TO OBJECT TO THE SETTLEMENT, YOU MUST SUBMIT A WRITTEN OBJECTION AS DESCRIBED IN THE FOLLOWING SECTION. IF YOU WISH TO APPEAR AT THE HEARING TO DISCUSS YOUR OBJECTION YOU MUST STATE IN YOUR OBJECTION YOUR INTENTION TO APPEAR AT THE FAIRNESS HEARING.

8.    **How Can You Object To The Proposed Settlement**

If you want to present objections at the Fairness Hearing, you must submit a written statement of the objection(s) to the Claims Administrator at the address below. Your objection will not be heard unless it is mailed to the Claims Administrator via First Class United States Mail, postage prepaid. To be effective any objections must be postmarked no later than _____, 2013 and received by the Claims Administrator no later than _____, 2013. You do not need to be represented by counsel to object. If you wish to present your objection at the fairness hearing, you must state your intention to do so in your written objection. You may hire a lawyer to assist you with your objection or to represent you at the Fairness Hearing.

[CLAIMS ADMINISTRATOR ADDRESS]

9.    **How Can You Opt Out Of The Settlement**

You have the right to exclude yourself, and yourself only, from this Lawsuit and Settlement. **If you choose to exclude yourself, you will not be barred from seeking relief with respect to any legal claims and will be free to pursue an individual claim, if any, against Defendant, but you will not be eligible to receive the benefits of this Settlement.**

If you intend to exclude yourself, you must complete the enclosed Opt-Out Statement and mail it to the Claims Administrator at the address below. The Opt-Out Statement must be mailed to the Claims Administrator via First Class United States Mail, postage prepaid, and postmarked no later than _____, 2013.

- 7 -

[CLAIMS ADMINISTRATOR ADDRESS]

**10.** **How Can You Examine Court Records**

      The foregoing description of the case is general and does not cover all of the issues and proceedings thus far.  In order to see the complete file, including a copy of the settlement agreement, you should visit the Clerk of Court located at 225 Cadman Plaza East Brooklyn, New York 11201.  The Clerk will make all files relating to this lawsuit available to you for inspection and copying at your own expense.  You may enter an appearance in this case through an attorney if you so desire.

**11.** **What If You Have Questions**

      If you have questions about this Notice, or want additional information, you can contact the Claims Administrator at [PHONE NUMBER].

      **Dated:** _____

      **This Notice is sent to you by Order of the United States District Court for the Eastern District of New York.**

# EXHIBIT C

**<u>Siewharack v. Queens Long Island Medical Group P.C.</u>**

Claims Administrator
[NAME]
[ADDRESS]
[ADDRESS]
[PHONE NUMBER]

# <u>CLAIM FORM AND RELEASE</u><br><u>INSTRUCTIONS</u>

**In order to receive any portion of the settlement funds you MUST complete, sign, date, and mail this CLAIM FORM AND RELEASE to the Claims Administrator at the address below in time for the Claims Administrator to receive it by _____, 2013. If the Claims Administrator does not receive the CLAIM FORM AND RELEASE by _____, 2013, you will NOT be eligible to receive any portion of the settlement funds. For more information on the Settlement, how your share of the settlement funds will be calculated, and your rights, please see the attached NOTICE.**

**By signing, dating, and mailing the CLAIM FORM AND RELEASE, you are also consenting to become a party to this action under the federal Fair Labor Standards Act, 29 U.S.C. § 216(b) and agreeing to the release of claims set forth below. (For Further Information, see NOTICE.)**

This Claim Form and Release must be personally filled out by the current or former employee who seeks to participate in the settlement or someone with a legal right to act on his or her behalf.

If you are a Class Member and you did not opt out of the settlement, and if you properly complete the Claim Form and Release and timely mail it to the Claims Administrator, you will be eligible for a distribution from the Settlement in accordance with the formula described in Section 6 of the Notice.

You may return the Claim Form and Release in the addressed, pre-paid envelope that has been enclosed. This Claim Form and Release must be sent to the address on that envelope:

Siewharack v. Queens Long Island Medical Group P.C.
[NAME]
[ADDRESS]

BE SURE TO MAKE A COPY OF THE SIGNED CLAIM FORM FOR YOUR RECORDS.

**CHANGE OF ADDRESS**

It is your responsibility to keep a current address on file with the Claims Administrator.  Please make sure to notify the Claims Administrator of any change of address.

## Siewharack v. Queens Long Island Medical Group P.C.

Claims Administrator
[Name]
[Address]
[Phone Number]

## CLAIM FORM AND RELEASE

### THIS FORM MUST BE RECEIVED BY THE CLAIMS ADMINISTRATOR NO LATER THAN [DATE].

[To be pre-inserted by Claims Administrator:]    [To be provided by employee:]
Name/Address Changes, if any:

Claim Number:_____    _____
Name:_____    _____
Address:_____    _____
City, State, Zip Code:_____    ( )_____
                                          Area Code    Home Telephone Number

## TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

SUBSTITUTE IRS FORM W-9

ENTER YOUR SOCIAL SECURITY NUMBER: __ __ __ - __ __ - __ __ __ __

CERTIFICATION: Under penalties of perjury, I certify that:

1. The social security number shown on this form is my correct taxpayer identification number; and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including U.S. resident alien).

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

SIGNATURE: _____    DATE: _____

The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding

By signing below, I hereby opt into the case *Siewharack v. Queens Long Island Medical Gourp P.C.*, 11-cv-03603-WFK-ARL (the "Litigation") pursuant to Section 16(b) of the Fair Labor standards Act, 29 U.S.C. § 216(b), and give my consent to become a party.

By signing below, I forever and fully release Queens Long Island Medical Group P.C. and Navigant Consulting Inc. and their respective successors, assigns, representatives, insurers, parents, subsidiaries, divisions, affiliates and related companies, present and former members, officers, agents, directors, partners, supervisors, attorneys, employees, consultants, and each and every one of them, and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, and each and every one of them and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, as well as Dr. Carlos Hleap, Frank Bonanno, Lonn McDowell, Peter Wolf, Karen O'Neill, Michael Horton, Dr. Anup Gewalla, Dr. Mark Friedman, and Dr. Roy Guinto from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or hours worked or that otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation ("Released Claims"). The Released Claims include without limitation claims asserted in the Litigation and any other claims based on federal, state or local law governing overtime pay, exempt status, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to provide itemized wage statements or wage notices, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146.

I declare under penalty of perjury that the above information is correct.


_____         _____
Date                            Signature

To be valid, this Opt-In Form and Individual Release must be properly completed, signed, dated, and mailed to the Claims Administrator at the following address via First Class United States Mail and postmarked by [INSERT DATE]:

[INSERT ADDRESS]

## YOU MUST COMPLETE ALL PAGES OF THE OPT-IN FORM AND INDIVIDUAL RELEASE

# EXHIBIT D

# OPT-OUT STATEMENT

## <u>Siewharack v. Queens Long Island Medical Group P.C.</u>

**SUBMIT THIS FORM ONLY IF YOU DO NOT WISH TO REMAIN A CLASS MEMBER.  IF YOU SUBMIT THIS FORM, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY MONEY FROM THE SETTLEMENT.**

I wish to opt out of the Settlement of the *Siewharack v. Queens Long Island Medical Group P.C.* case.  I understand that by opting out, I will be excluded from the Settlement and will receive no money from the Settlement.  I understand that in any separate lawsuit, it is possible that I may receive nothing or less than I would have received if I had filed a claim under the Settlement in this lawsuit.  I understand that any separate lawsuit by me will be undertaken at my own expense and at my own risk.  I understand that Counsel for the Class will not represent my interests if I opt out.

_____

Print Name

_____

Social Security Number

_____

Signature

**SEND TO CLAIMS ADMINISTRATOR AT
[ADDRESS]**

**MUST BE MAILED BY UNITED STATES FIRST CLASS MAIL
AND POSTMARKED NO LATER THAN [DATE]**

**WE ADVISE YOU TO KEEP A COPY FOR YOUR RECORDS—YOU MAY WISH TO MAIL RETURN RECEIPT REQUESTED**

# EXHIBIT E

GENERAL RELEASE ("RELEASE")
OF PLAINTIFF AND CLASS REPRESENTATIVE
KARMA SIEWHARACK

1.      **Persons and Entities to Be Released.**  The persons released pursuant to this Agreement shall include Queens Long Island Medical Group, P.C. ("QLIMG")  and Navigant Consulting Inc. ("Navigant") and their respective successors, assigns, representatives, insurers, parents, subsidiaries, divisions, affiliates and related companies, present and former members, officers, agents, directors, partners, supervisors, attorneys, employees, consultants, and each and every one of them, and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, and each and every one of them and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, as well as Dr. Carlos Hleap, Frank Bonanno, Lonn McDowell, Peter Wolf, Karen O'Neill, Michael Horton, Dr. Anup Gewalla, Dr. Mark Friedman, and Dr. Roy Guinto; (all of which are referred to collectively as the "Released Parties").

2.      **Release.**  In exchange for good and valuable consideration described in Section 4 of the Global Settlement Agreement entered into in *Siewharack v. Queens Long Island Medical Gourp P.C.,* 11-cv-03603-WFK-ARL, in the United States District Court for the Eastern District of New York (the "Litigation"), Karma Siewharack ("Siewharack") agrees to forever and fully release the Released Parties, and all persons acting by, through, under or in concert with them, and each and every one of them and their respective heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with them, from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which she has or might have, known or unknown, of any kind whatsoever, including those based upon federal, state or local laws governing overtime pay, wage requirements, or hours worked or that otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on federal, state or local law governing overtime pay, exempt status, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to provide itemized wage statements or wage notices, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146; the Age Discrimination in Employment Act of 1967 ("ADEA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); the Reconstruction Era Civil Rights Act ("Civil Rights Act"); the Civil Rights Act of 1991 ("CRA of 1991"); the Americans with Disabilities Act ("ADA"); the Family and Medical Leave Act ("FMLA"); the Employee Retirement Income Security Act of 1974 ("ERISA"); the Equal Pay Act ("EPA"); the Rehabilitation Act ("RA"); Whistleblower Protection Statutes (collectively, "WPS"); the New York State Human Rights Law, N.Y. Exec. Law 290, et seq.; Article I, Section 11 of the New York State Constitution; and the New York City Human Rights Law; N.Y.C.

Admin. Code 8-101, *et seq.* This Release does not release or waive claims arising after the execution of this Release. Siewharack acknowledges that she has voluntarily entered into this Release. Siewharack acknowledges that the payment provided to her in exchange for this Release constitutes consideration for the Release, in that it is a payment to which he would not have been entitled had she not signed this Release.

     3.    **OWBPA/ADEA Waiver.** Siewharack agrees that she has voluntarily executed this Release on her own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that she may have now or in the future. Siewharack is hereby advised to consult with her attorney about this Release prior to executing this Release. Siewharack hereby acknowledges that she did, prior to executing this Release, consult with her attorney about this Release. Siewharack is hereby given the opportunity to take a period of at least twenty-one days to consider this Release. In the event Siewharack signs this Release before that time, she certifies, by such execution, that she knowingly and voluntarily waived the right to the full twenty-one days, for reasons personal to her, with no pressure from any QLIMG representative to do so. This Release is not effective or enforceable for the period of seven days after Siewharack signs it, and Siewharack may revoke it during that time frame. If Siewharack does not revoke prior to the conclusion of the seventh day after she signs this Release, this Release will become fully enforceable at that time. Revocation of this Release by Siewharack will in no way alter her rights and obligations under the Global Settlement Agreement, including the release of claims set forth therein, except that she will no longer be entitled to any service payment pursuant to Section 4 of the Global Settlement Agreement.

     4.    **Non-Admissions.** Siewharack understands and agrees that the payment of monies herein set forth does not constitute an admission of liability or violation of any applicable law, contract, provision, benefit plan, rule or regulation, as to which the Released Parties expressly deny any such liability or violation.

     5.    **No Rehire.** Siewharack further understands and agrees that QLIMG, Navigant, and/or any of their parents, subsidiaries, divisions, affiliates or other commonly controlled entities, successors and/or assigns, shall be under no obligation to reinstate, hire, rehire or consider her for future employment by QLIMG and/or Navigant. Siewharacak expressly agrees that she will not knowingly apply for any such employment, reinstatement, hire or rehire at any time in the future.

     6.    **Choice of Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York.

     7.    **No Reliance on Representations**. Siewharack represents and acknowledges that, in executing this Agreement, she has not relied upon any representation or statement not set forth herein made by Defendant or by any of Defendant's agents, representatives, or attorneys. She also acknowledges that she understands and agrees to this Release.

     8.    **Construction**. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. There shall be no presumption or construction against the Party who caused this Agreement to be drafted.

9.     **Counterparts, Facsimiles And Copies.**  Any signature made and transmitted by facsimile, copy or .pdf for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement.

10.     **Court Approval.**  This Release has been approved by the Court as part of its approval of the settlement of the Litigation.

DATED: _____     BY: _____
                                          Karma Siewharack

NOTARIZATION
State of New York
County of _____

Subscribed and sworn to me this _____ day of _____, 2013 by
_____ who personally proved to me on the basis of satisfactory evidence to be the person who appeared before me.