UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KARMA SIEWHARACK, on behalf of herself
and all others similarly situated,          Index No. 11-CV-03603-WFK-ARL

          Plaintiff,

    -against-

QUEENS LONG ISLAND MEDICAL GROUP
P.C.,

          Defendant.
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR ORDER: (1) CONDITIONALLY CERTIFYING
SETTLEMENT CLASS; (2) GRANTING PRELIMINARY APPROVAL
TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION; (3) DIRECTING DISSEMINATION OF NOTICE
AND RELATED MATERIAL TO THE CLASS; AND (4) SETTING
DATE FOR FAIRNESS HEARING AND RELATED DATES**


Lee S. Shalov, Esq.
**McLaughlin & Stern, LLP**
260 Madison Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com

Louis Ginsberg, Esq.
**Law Firm of Louis Ginsberg, P.C.**
1613 Northern Boulevard
Roslyn, NY 11576
Telephone: (516) 625-0105, ext. 13
lg@louisginsberglawoffices.com

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

    A. Procedural History ..................................................................................... 2
    B. The Settlement Fund And Plan of Allocation ............................................ 4
    C. Releases ..................................................................................................... 4
    D. The Class ................................................................................................... 5
    E. Notice To The Class.................................................................................... 5
    F. Attorneys' Fees and Litigation Costs......................................................... 6
    G. Plaintiff's Service Award ........................................................................... 6

CLASS ACTION SETTLEMENT PROCEDURE ................................................. 6

ARGUMENT .......................................................................................................... 8

    I.     Standards For Preliminary Approval .................................................. 8
    II.    The Settlement Falls Within The Range Of Reasonableness ............... 9
    III.   Conditional Certification of the Rule 23 Class Is Appropriate ................... 10
        A. Numerosity ...................................................................................... 11
        B. Commonality ................................................................................... 12
        C. Typicality ......................................................................................... 12
        D. Adequacy of the Named Plaintiff .................................................... 13
        E. Certification Is Proper Under Rule 23(b)(3) .................................... 14
            i.   Common Questions Predominate ............................................ 14
            ii.  A Class Action Is A Superior Mechanism ............................. 15
        F. The Class Satisfies Rules 216(b) .................................................... 16
    IV.   Plaintiff's Counsel Should Be Appointed Class Counsel ..................... 17
    V.    The Notice Plan Is Appropriate .......................................................... 18
        A. The Notice Satisfies Due Process .................................................... 18
        B. The Notice Plan and Award Distribution Process Are Appropriate ................... 19

CONCLUSION ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................... 14, 15

*Clark v. Ecolab, Inc.*,
  2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ........................................ 8, 15

*Clark v. Ecolab, Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ........................................ 6

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ........................................................... 14

*Cruz v. Hook-Superx, LLC*,
  2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) ........................................ 15

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..................................................... 16

*Duling v. Gristede's Operating Corp.*,
  2012 WL 5835302 (S.D.N.Y. Nov. 15, 2012) ....................................... 11

*Dziennik v. Sealift Inc.*,
  2007 WL 1580080 (E.D.N.Y. May 29, 2007) ........................................ 13

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) .................................................. 9, 12

*Gen. Tel. Co. of Sw. v. Falvon*,
  457 U.S. 147 (1982) ................................................................. 12

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ......................................... 6, 10

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ......................................................... 15

*Hoffman-Laroche, Inc. v. Sperling*,
  493 U.S. 165 (1989) ................................................................. 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................ 9

*In re Prudential Sec. Inc. Ltd. Partnerships*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................... 9

*In re State Street Bank and Trust Co. ERISA Litig.*,
  2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) ........................................ 9

*In re Traffic Executive Ass'n*,
  627 F.2d 631 (2d Cir. 1980) ......................................................... 8

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................. 14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .................................................................. 8

*Johnson v. Brennan*,
    2011 WL 1872405 (S.D.N.Y. May 17, 2011) ..................................... 16

*Khait v. Whirlpool Corp.*,
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................. 6, 13

*Lynch v. United Services Automobile Assoc.*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ............................................... 16

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ............................................................. 13

*Marriott v. Cnty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. 2005) ..................................................... 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998) ............................................................... 8

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................... 14

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ..................................................... 14

*Palacio v. E*TRADE Financial Corp.*,
    2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ................................. 11

*Penney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ............................................................. 13

*Robidoux v. Celanti*,
    987 F.2d 931 (2d Cir. 1993) ............................................................. 12

*Scholtisek v. Eldre Corp.*,
    229 F.R.D. 381 (W.D.N.Y. 2005) ..................................................... 16

*Stefaniak v. HSBC Bank USA*,
    2008 WL 7630102 (W.D.N.Y. June 28, 2008) ................................... 6

*Toure v. Cent. Parking Sys.*,
    2007 WL 2872455 (S.D.N.Y. Sep. 28, 2007) ................................... 13

*Trinidad v. Breakaway Courier Sys., Inc.*,
    2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ..................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................. 8, 9

iii

**STATUTES**

Fed. R. Civ. Pro. 23 ............................................................................. passim

Fed. R. Civ. Pro. 54 ............................................................................. 6

29 U.S.C § 216(b) ............................................................................. passim

**OTHER MATERIALS**

Herbert B. Newberg & Alba Conte

    *Newberg on Class Actions* §§ 11.22 *et seq.* (4th ed. 2002) ...................................... passim

*Manual for Complex Litigation* § 30.41 (3d ed.) ......................................................... 10

## INTRODUCTION

Plaintiff and her counsel are pleased to present to the Court for preliminary approval a $2.45 million settlement of a proposed collective and class action brought on behalf of hourly paid employees of Defendant Queens Long Island Medical Group P.C. ("QLIMG" or the "Company".) As described in the accompanying Joint Declaration of Lee S. Shalov and Louis Ginsberg (the "Joint Declaration"), Plaintiff's claims arise under the Fair Labor Standards Act (the "FLSA") and McKinney's New York Labor Law ("NYLL.") In principal part, Plaintiff alleges that QLIMG violated the FLSA and the NYLL by causing QLIMG's time-clock system to artificially round down the amount of time employees worked at the Company's facilities. As a result, Plaintiff alleges that she and other hourly paid employees were not fully compensated for work performed before and after scheduled shifts and during meal breaks. Plaintiff also alleges that QLIMG employees did not receive overtime when they worked in excess of forty hours a week.

After extensive discovery efforts, substantial motion practice and several mediation sessions, Plaintiff's Counsel has secured an outstanding settlement on behalf of QLIMG employees. Specifically, QLIMG will create a settlement fund of $2.45 million to reimburse hourly paid employees the unpaid compensation they are owed by virtue of the Company's allegedly improper time clock policies and other unlawful labor practices. This fund will provide a substantial, all-cash benefit for QLIMG employees in settlement of a complex lawsuit fraught with many litigation risks and obstacles. Plaintiff's Counsel believes this is one of the largest settlements of a wage and hour class action in this District.

This motion is the first step in the settlement approval process. Specifically, Plaintiff respectfully requests that the Court: (1) conditionally certify the settlement class under Federal Rule of Civil Procedure 23(b)(3) and 29 U.S.C. §216(b); (2) grant preliminary approval of the

1

Global Settlement Agreement (the "Settlement Agreement") attached as Exhibit A to the Joint Declaration; (3) approve the proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice"), attached as Exhibit B to the Settlement Agreement; (4) approve Plaintiff's proposed schedule for final settlement approval and set a date for the fairness hearing and related dates; and (5) appoint McLaughlin & Stern LLP and the Law Firm of Louis Ginsberg, P.C. (collectively, "Plaintiff's Counsel") as Class Counsel ("Class Counsel.")

## STATEMENT OF FACTS

**A.    Procedural History**

QLIMG is a physician-owned medical practice group with 19 medical offices in Long Island and over one thousand non-exempt, hourly paid employees.   The Company has approximately 300 primary and specialty care physicians and provides care to roughly 200,000 patients.  Joint Declaration ¶ 2.

Plaintiff alleges in her Amended Complaint that QLIMG violated the FLSA and the NYLL by causing QLIMG's time-clock system to artificially round down the amount of time employees were credited with working at the Company's facilities.  This practice had the alleged effect of depriving employees of full compensation for work performed before and after scheduled shifts and during meal breaks.  Plaintiff also alleges that QLIMG employees did not receive overtime when they worked in excess of forty hours a week.   Joint Declaration ¶ 4.

During the course of the litigation, Plaintiff's Counsel expended substantial time and effort prosecuting Plaintiff's claims.  Among other things, Plaintiff's Counsel conducted in-depth interviews of QLIMG employees to determine the hours that they worked, the wages they were paid, and the amount of time they worked through breaks and before and after shifts.  Plaintiff's Counsel also reviewed thousands of pages of documents produced by QLIMG and non-parties in

response to multiple sets of document requests and subpoenas, including timecard reports, employee handbooks, internal e-mails, employee paystubs, and union contracts.  Plaintiff's Counsel also engaged in numerous "meet and confer" sessions with Defendant's counsel in an effort to secure a more complete production of relevant documents.  In addition, depositions of the parties were conducted and additional depositions were scheduled at the time the settlement was reached.  Comprehensive spreadsheets were also prepared by Plaintiff's Counsel to assess the scope and impact of the Company's biased rounding policies.  Based on these efforts, Plaintiff's Counsel was able to develop a full and complete understanding of the strengths and weaknesses of Plaintiff's claims and the extent of class member damages.  Joint Declaration ¶ 6.

Plaintiff's Counsel also engaged in extensive motion practice before Magistrate Judge Arlene R. Lindsay.  Among other things, Plaintiff's Counsel moved to compel employee records in addition to those produced by Defendant regarding Plaintiff's employment with QLIMG; moved for expedited discovery regarding an acquisition transaction involving QLIMG and another entity; and opposed Defendant's motion to compel information regarding Plaintiff's finances and ability to pay litigation costs.   Joint Declaration ¶ 7.

While discovery was actively underway, several mediation sessions were held before John E. Sands, a highly experienced mediator in wage and hour class actions such as this.  Those sessions -- and subsequent negotiations overseen by Mr. Sands -- resulted in an agreement in principle to settle the litigation for $2.45 million dollars.  Many weeks were thereafter devoted to negotiating the terms and conditions of the Settlement Agreement and the exhibits associated with the settlement.   Joint Declaration ¶ 8.

3

**B.**     **The Settlement Fund And Plan Of Allocation**

Pursuant to the Settlement Agreement, QLIMG will deposit $2.45 million dollars into an interest bearing settlement fund (the "Total Settlement Amount") within ten days of preliminary approval of the settlement.  The fund will be used to pay administration costs, attorneys' fees and expenses awarded by the Court, and a proposed service award to compensate Plaintiff for her time and commitment in prosecuting the case.  In addition, QLIMG shall pay 50% of the employer's share of all state and federal payroll taxes with respect to the amounts treated as wages up to a maximum cap of $120,000.  The remainder of the employer's share of state and federal payroll taxes shall be paid from the settlement fund.   Joint Declaration ¶ 9.

After these deductions are made, the Total Settlement Amount will be distributed to QLIMG employees who do not opt out of the settlement and who submit valid proofs of claims on a *pro rata* basis depending on their length of employment with the Company and the total wages earned throughout their employment.  This allocation formula seeks to fairly compensate employees based on the duration of their employment with QLIMG and rate of pay, the number of shifts they worked at QLIMG, and the amount of compensation they were allegedly deprived of by virtue of the Company's rounding practices.  Thus, for example, an employee with gross wages of $50,000 who worked part time for three years will receive a lesser share of the settlement fund than a full time employee with gross wages of $200,000 over a six year period. Joint Declaration ¶ 10.

**C.**     **Releases**

The Settlement Agreement provides that Plaintiff shall execute a general release of all her employment related claims and that each member of the Class (as defined below) who does not timely opt out of the settlement will release QLIMG, its officers, directors and certain related

parties from all claims based on federal, state or local laws governing overtime pay, wage payments, or hours worked or that otherwise relate to the facts, acts, transactions, occurrences, and events alleged in the lawsuit.  Settlement Agreement § 5.2.

**D.      The Class**

The Class is comprised of all current and former non-exempt employees, whether or not covered by a collective bargaining agreement, who are or were employed by QLIMG in any of its offices and/or urgent care centers at any time from July 26, 2005 (six years prior to the filing of Plaintiff's Complaint) to the date the Court enters the Order Granting Preliminary Approval. Settlement Agreement § 1.5, 2.4.

**E.      Notice To The Class**

The Settlement Agreement provides that within twenty calendar days following entry of the Preliminary Approval Order, QLIMG will provide the claims administrator with a list of the names and last known home addresses, phone numbers, and, to the extent Defendant has them, last known personal e-mail addresses of Class members.   Settlement Agreement § 3.5(A). Within fifteen calendar days thereafter, the claims administrator shall mail the Notice to each Class member and also send the Notice to Class members for whom Defendant has provided personal e-mail addresses.  Settlement Agreement § 3.5(D).  The claims administrator will take reasonable steps to obtain the correct home address of any class member whose notice is returned as undeliverable.   Settlement Agreement § 3.5(E).   The Notice contains information about the nature of the lawsuit, attorneys' fees and expenses, the proposed service award to Plaintiff, how Class members can exclude themselves from the Class or object to the settlement, and how Class members can participate in the settlement.  Settlement Agreement § 3.6, 3.7, 3.8; Settlement Agreement, Exhibit B.

**F.**   **Attorneys' Fees and Litigation Costs**

At the fairness hearing, Plaintiff's Counsel will apply for no more than one-third of the
Total Settlement Amount as attorneys' fees and an additional amount for reimbursement of
reasonable litigation costs and expenses.[1]   Settlement Agreement § 4.3(A).   The Court need not
rule on fees and costs now.   Plaintiff's Counsel will file a formal motion for approval of fees and
costs along with their motion for final approval of the settlement.   *See* Fed. R. Civ. P. 23(h) and
54(d)(2).

**G.**   **Plaintiff's Service Award**

In addition to her distribution under the settlement, Plaintiff will seek an additional
payment from the Total Settlement Amount in recognition of the services she rendered to the
Class up to $10,000 ("Service Award.")   Settlement Agreement § 4.4.   Settlement Agreement §
4.4(A).   Plaintiff will move for Court approval of the service award simultaneously with her
motion for final approval of the settlement.

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval
in class action settlements that include three distinct steps: (1) preliminary approval of the
proposed settlement after submission to the Court of a written motion for preliminary approval
and conditional certification of a settlement class; (2) dissemination of notice of settlement to all
affected class members; and (3) a final settlement hearing at which class members may be heard
regarding the settlement, and at which argument concerning the fairness, adequacy, and

---

[1]   This is a typical fee award in the Second Circuit.   *See Clark v. Ecolab, Inc.*, 2010 WL 1948198 at *8
(S.D.N.Y. May 11, 2010) (finding class counsel's request for one-third of the settlement fund "reasonable and
"consistent with the norms of class litigation in this circuit"") (citing *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL
782596 at *5 (S.D.N.Y. Mar. 24, 2008); *See also Khait v. Whirlpool Corp.*, 2010 WL 2025106 (E.D.N.Y. Jan. 20,
2010) (a fee award of $3,052,500 or 33% is consistent with prior decisions of the Second Circuit and is reasonable
in cases where Class Counsel's fee entitlement is entirely contingent upon success.); *Stefaniak v. HSBC Bank USA*,
2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (a fee award of "33%of the Settlement Fund is typical in class
action settlements in the Second Circuit").

6

reasonableness of the settlement may be presented, and the Court may finally certify the settlement class. *See* Fed R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") §§ 11.22 *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, appointing Plaintiff's Counsel as Class Counsel, and approving the Notice and authorizing the claims administrator to send it.

The parties respectfully submit the following proposed schedule for the Court's consideration and approval:

1. Within 20 calendar days following the entry of the Preliminary Approval Order, Defendant will provide the claims administrator and Class Counsel with a list, in electronic form, of the names and last known home addresses, phone numbers, and, to the extent Defendant has them, last known personal e-mail addresses of Class Members. Settlement Agreement § 3.5(A).

2. Within 15 calendar days after Defendant's delivery of the above-described information, the claims administrator will mail the Notice to members of the Class. Settlement Agreement § 3.5(D).

3. Class members will have 60 calendar days after the Notice is mailed to provide timely and complete claim forms to the claims administrator. Settlement Agreement § 3.7(B).

4. Class members will have 60 days after the date the Notice is mailed to opt out of or object to the settlement ("Opt-Out Period"). Settlement Agreement § 3.6(B).

5. Plaintiff will file a Motion for Judgment and Final Approval of Settlement no later than 45 calendar days after the end of the Opt-Out Period. Settlement Agreement § 3.9.

6. If the Court grants Plaintiff's Motion for Final Approval, the Court will enter Judgment in accordance with the Settlement Agreement and dismiss the case with prejudice. Settlement Agreement § 1.8.

# ARGUMENT

## I.    Standards For Preliminary Approval

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *See also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation..." *Id.* (internal quotation marks omitted.)

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Id.* (citing *Newberg* § 11.25.) To grant preliminary approval, the court need only find that there is ""probable cause" to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2nd Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness...and appears to fall within the range of possible approval,"

the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41.)

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 284 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 296 F.3d at 116 (internal quotation marks omitted.) If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177 at *4 (S.D.N.Y. July 27, 2007.)

Preliminary approval is the first step in the settlement process. It allows notice to issue and for class members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of class members' input.

## II.   The Settlement Falls Within The Range Of Reasonableness

At the preliminary approval stage, the court only needs to decide if the proposed settlement "fits within the range of possible approval." *In re State Street Bank And Trust Co. ERISA Litigation*, 2009 WL 3458705 (S.D.N.Y. 2009) (citing *In re Prudential Securities Inc. Ltd. Partnerships*, 163 F.R.D. 200, 209-210 (S.D.N.Y. 1995). In other words, because the court cannot fully assess a settlement prior to providing class members notice of the settlement and the opportunity to present objections, the court's first-stage analysis consists of a review for "obvious deficiencies." *In re Prudential Securities Inc. Ltd. Partnerships*, 163 F.R.D. at 209. This is a modest standard:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives…or excessive compensation for attorneys, and appears to fall within the range of possibly approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

Here, the parties actively negotiated the proposed Settlement in good faith and under the supervision of an experienced and independent mediator.  Moreover, the substantial discovery taken in this case has allowed Plaintiff's Counsel – who are experienced class action and employment attorneys – to sufficiently assess the strengths and weaknesses of the claims against QLIMG and the benefits of a proposed settlement that will provide significant compensation to members of the Class.  Joint Declaration ¶ 6.  Moreover, Plaintiff's Counsel will request no more than one-third of the total settlement amount in compensation for their efforts on a purely contingent basis, "which is consistent with the norms of class litigation in this circuit." *Gilliam*, 2008 WL 782596 at *5 (approving settlement of FLSA collective action and citing cases holding that 1/3 of common fund as attorneys fees is reasonable.)   For these reasons, Plaintiff respectfully requests that preliminary approval of the settlement is warranted and appropriate.

**III.    Conditional Certification of the Rule 23 Class Is Appropriate**

For settlement purposes, Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(a) and 23(b)(3):

> All current and former non-exempt employees, whether or not covered by a collective bargaining agreement, who are or were employed by Defendant in any of its offices and/or urgent care centers from July 26, 2005 to the date of the Order Granting Preliminary Approval.

Notably, QLIMG does not dispute for settlement purposes that the Class meets the requirements for class certification. *See Newberg* § 11.27 ("When the court has not yet entered a

formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.")

Conditional Rule 23 class certification for settlement purposes and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *See Palacio v. E\*TRADE Financial Corporation*, 2012 WL 1058409 at \*1 (S.D.N.Y. Mar. 12, 2012). Under Federal Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Federal Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) also requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In this case, all of the foregoing criteria are satisfied.

A.   <u>**Numerosity**</u>

"[N]umerosity is presumed at a level of 40 members." *Duling v. Gristede's Operating Corp.*, 2012 WL 5835302 at \* 1 (S.D.N.Y. Nov. 15, 2012). Here, there are over 1000 members of the Class, easily satisfying the requirement of numerosity.

### B.   Commonality

Commonality asks "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falvon*, 457 U.S. 147, 157 n.13 (1982).   Here, there are numerous questions of fact and law that are common to members of the Class, including: (i) whether QLIMG's time-clock system rounded down the amount of time Plaintiff and Class members were credited with having worked; (ii) whether Class members received overtime pay to which they were entitled for all hours worked over forty in a week; (iii) whether QLIMG maintained true and accurate time records for all hours worked by Plaintiff and other members of the Class; (iv) whether QLIMG acted willfully or in reckless disregard of applicable law; and (v) the nature and extent of class-wide injury and appropriate damages.

### C.   Typicality

Federal Rule 23 requires that the claims of the class representative be typical of the claims of the class.   "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.   Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).   Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class

12

members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (internal quotation marks omitted).

In this case, Plaintiff's claims arise from the same factual and legal circumstances that form the basis of other Class members' claims.  Like other members of the Class, Plaintiff alleges that QLIMG's time clock system artificially deprived her OF compensation to which she was entitled for work performed before scheduled shifts, after scheduled shifts, and during meal breaks.  Also like other members of the Class, Plaintiff alleges that QLIMG's time-clock system deprived her of overtime pay when she worked in excess of forty hours a week.  Thus, since Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class members' claims, the typicality requirement is satisfied.  *See Khait*, 2009 WL 6490085, at *2.

**D.     Adequacy of the Named Plaintiff**

Federal Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and…have no interests antagonistic to the interests of other class members.""  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455 at *7 (S.D.N.Y. Sep. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, 2007 WL 1580080 at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  Here, Plaintiff's interests are directly aligned with those of other Class members as she possesses and has prosecuted the same claims arising from similar facts and circumstances.  Moreover, Plaintiff and her counsel have aggressively litigated this case from the outset, serving

13

discovery requests, interviewing Class members, taking and defending depositions, filing motions to compel and engaging in hard-fought settlement negotiations.   For these reasons, the adequacy requirement is satisfied.

### E.      Certification Is Proper Under Rule 23(b)(3)

Federal Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### (i)      Common Questions Predominate

To satisfy Federal Rule 23(b)(3), Plaintiff must show that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole...predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007) (internal quotation marks omitted).   The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. Of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (internal quotation marks omitted).   Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)).   Where plaintiff and potential class members are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

In this case, the central issue is whether QLIMG configured its time clock system in a biased manner so that hourly wage employees were consistently deprived of compensation during and after scheduled shifts and while working through meal breaks.  This question applies equally to every member of the Class and is the basis upon which QLIMG's liability would be established if the action were litigated through trial.  *See Cruz v. Hook-Superx, LLC*, 2010 WL 3069558 at *3 (S.D.N.Y. Aug. 5, 2010) ("Plaintiff's allegation is simple and identical across all claims:  Defendants have misclassified employees to escape overtime wage obligations."); *Clark*, 2009 WL 6615729 at *5 (common factual allegations and common legal theory predominated over factual and legal variations among class members in settlement of wage and hour misclassification case.)   Accordingly, the element of predominance exists here.

### (ii)   A Class Action Is A Superior Mechanism

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") Federal Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority inquiry, including: class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, Class members have limited financial resources with which to prosecute individual actions; indeed, Plaintiff is unaware of any pending individual lawsuits filed by Class members

arising from the same allegations.   Moreover, concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.   In addition, employing the class device will not only achieve economies of scale, but will conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.   *See Johnson v. Brennan*, 2011 WL 1872405, *2 (S.D.N.Y. May 17, 2011) (class adjudication conserves judicial resources); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).   Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the claims asserted in this action.

### F.   The Class Satisfies Rule 216(b)

This case is also appropriate for certification under Section 16(b) of the FLSA, 29 U.S.C. § 216(b).   Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated."   29 U.S.C. § 216(b).   Courts follow a two-phased approach for determining whether an FLSA action meets the "similarly situated" standard.   *See e.g., Lynch v. United Services Automobile Assoc.*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)).   In the initial, "conditional" certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires only that the named plaintiff make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."   *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).

Applied here, Plaintiff and other members of the Class are similarly situated for purposes of conditional certification of a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b).   Plaintiff and other Class members had time they performed work at QLIMG's facilities

consistently rounded down by QLIMG's time-clock system.  This common practice resulted in Class members not being fully compensated for work performed before scheduled shifts, after scheduled shifts, and during meal breaks.  Accordingly, conditional certification of a settlement class under 29 U.S.C. § 216(b) is appropriate.

**IV.      Plaintiff's Counsel Should Be Appointed Class Counsel**

The attorneys representing Plaintiff, Lee S. Shalov of McLaughlin & Stern LLP and Louis Ginsberg of the Law Firm of Louis Ginsberg, P.C. should be appointed as Class Counsel. Federal Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiff's Counsel meet these criteria.   As set forth in the accompanying Joint Declaration, Plaintiff's Counsel have performed substantial work identifying, investigating, analyzing, prosecuting, and settling Plaintiff's and Class members' claims.   Additionally, Plaintiff's Counsel has substantial experience prosecuting and settling class actions, including wage and hour class actions, and the attorneys assigned to this matter are well-versed in wage and hour and class action law and are well-qualified to represent the interests of the Class.

17

Accordingly, courts have repeatedly found Plaintiff's Counsel to be adequate class counsel in similar class actions.

In fact, as recently as July 23, 2012, during a fairness hearing granting final approval to a class-wide settlement of a wage and hour class action in which Messrs. Shalov and Ginsberg acted as counsel for the class, the Honorable Barbara S. Jones, United States District Judge, Southern District of New York, complimented counsel by stating: "… I do believe that there were some issues in the case, legal issues that were complex and I think that this is an excellent result and that, counsel, you have been able to achieve that excellent result quickly…" "…Each of the firms before me do have experience, substantial experience in prosecuting wage-and-hour actions such as this." *David Ludwig, on behalf of himself and all others similarly situated v. Pret A Manger (USA), Ltd., d/b/a Pret A Manger* (Index No.: 11 CV 5677).

## V.   **The Notice Plan Is Appropriate**

### A.   **The Notice Satisfies Due Process**

The Notice, attached to the Settlement Agreement as Exhibit B, fully complies with due process, Federal Rule of Civil Procedure 23 and the FLSA.  Notice to potential FLSA opt-ins should be "timely, accurate, and informative." *Hoffman-Laroche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> | | |
> |---|---|
> | (i) | the nature of the action; |
> | (ii) | the definition of the class certified; |
> | (iii) | the class claims, issues, or defenses; |
> | (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
> | (v) | that the court will exclude from the class any member who requests exclusion; |
> | (vi) | the time and manner for requesting exclusion; and |

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice satisfies these requirements.   Among other things, it: (i) describes the definition of the Class, the terms of the settlement and the nature of the case; (ii) informs the Class about counsel's request for attorneys' fees and expenses and Plaintiff's service award; (iii) instructs Class members how to object or opt out of the settlement; and (iv) explains how settlement funds will be allocated to Class members.   Accordingly, the detailed information in the Notice is more than adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B) and the FLSA.

### B.    The Notice Plan and Award Distribution Process Are Appropriate

The Settlement Agreement provides that notice will be mailed to the last known home address of each class member and to any personal e-mail addresses provided by QLIMG within thirty days of the Order Granting Preliminary Approval.  Settlement Agreement § 3.5(A), 3.5(D). The claims administrator will take reasonable steps to obtain the correct home address of any class member whose notice is returned by the post office as undeliverable.    Settlement Agreement § 3.5(E).  The Notice informs Class members that they will need to file a claim form and sign a release to receive a distribution from the settlement and that, unless they opt-out, they are releasing their claims regardless of whether they file a claim form and release.   Settlement Agreement, Exhibit B, § 6(b), 6(c).  Class members will have 60 calendar days from the date of the mailing to provide a claim form and release to the claims administrator.    Settlement Agreement § 3.7(B).   By virtue of these procedures, the settlement attempts to reach most all members of the Class to inform them of the settlement and allow them the opportunity to share in the settlement proceeds.

19

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) conditionally certify the settlement class; (2) grant preliminary approval of the Settlement Agreement; (3) approve the proposed Notice and plan of distribution; (4) approve Plaintiff's proposed schedule for final settlement approval and set a date for the Fairness Hearing and related dates; and (5) appoint Plaintiff's Counsel as Class Counsel.

Dated: January 31, 2013

Respectfully Submitted,

By:

Lee S. Shalov, Esq.
**McLaughlin & Stern, L.L.P.**
260 Madison Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com

Louis Ginsberg, Esq.
**Law Firm of Louis Ginsberg, P.C.**
1613 Northern Blvd.
Roslyn, NY 11576
Telephone: (516) 625-0105 X. 13
lg@louisginsberglawoffices.com

*Attorneys for Plaintiff and the Class*

20